Eric S. DUTSON, Plaintiff,

v.

FARMERS INSURANCE EXCHANGE, Truck Insurance Exchange, Fire Insurance Exchange, Mid–Century Insurance Co., and Farmers New World Life Insurance, Defendants.

Civ. No. 92–343–RE.

United States District Court, D. Oregon.

Jan. 5, 1993.

Craig D. Curtright, Edward S. McGlone III, Lawrence E. Mann, Wallace & Klor, P.C., Portland, OR, for plaintiff.

Richard C. Hunt, Craig D. Bachman, Lane Powell Spears Lubersky, Portland, OR, for defendants.

REDDEN, Chief Judge.

## BACKGROUND

Plaintiff alleges four claims for relief: (1) handicap discrimination; (2) breach of contract; (3) "slander per se;" and (4) intentional infliction of emotional distress. Plaintiff is an insurance agent for defendants Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid–Century Insurance Company and Farmers New World Life Insurance Company (defendants). Defendants move for summary judgment on each of plaintiff's claims.

This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. Diversity of citizenship exists between plaintiff and defendants.

## STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The materiality of a fact is determined by the substantive law on the issue. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir.1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go

beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Electrical,* 809 F.2d at 630.

## DISCUSSION

### 1. *Handicap Discrimination*

██ Plaintiff alleges that defendants discriminated against him because he is handicapped. Plaintiff has acted as an insurance agent for defendants since December 6, 1986. Plaintiff is afflicted with hemophilia and has been HIV–positive for approximately five years. Plaintiff alleges that during the spring of 1990 and continuing through January 1992, defendants repeatedly attempted to terminate plaintiff or to coerce him to resign his position due to his status as a disabled person.

I grant defendants' summary judgment motion as to plaintiff's handicap claim finding that plaintiff is an independent contractor. In order to come under the protection of federal and state discrimination statutes, plaintiff must demonstrate the existence of an employment relationship. *Jenkins v. Travelers Ins. Co.,* 436 F.Supp. 950 (D.Or. 1977) (insurance company career agent bringing action under Civil Rights Act was found to be an independent contractor rather than an employee and therefore not entitled to the protection of the Civil Rights Act).

Defendants contend that plaintiff's Agreement with defendants (entered into when plaintiff first associated with defendants) specifically provides that plaintiff is an independent contractor. Plaintiff admitted that he read and understood the Agreement, including the provision that agents are independent contractors. Transcript, p. 26. I rely on the following evidence in reaching my conclusion that an employee/employer relationship did not exist: plaintiff has no supervisor; he operates his insurance agency as a sole proprietorship (tr. p. 63); he sets his own office hours (tr. 63, 103, 105); schedules his vacations (tr. 67–68); arranges for coverage of his office when he is off (tr. 68); determines which prospective clients he will solicit (tr. 127); pays for all of his business licenses and insurance licenses (tr. 51–52, 77–78); he selected his office location, negotiated his lease, and made decisions regarding relocation of his office (tr. 40, 42, 102); he personally purchased all of his office furniture and equipment (tr. 40–42, 43, 45–46, 47, 49–50, 102–107); he purchased a vehicle which he uses solely in connection with his insurance business (tr. 53–54); he established trust accounts at a bank of his selection (tr. 60); he employed other employees and made all decisions as to hiring, rate of pay and length of service (tr. 68–71); his earnings do not depend on the number of hours he works but upon his efforts and skill in placing business and writing insurance (tr. 128); he has undertaken various promotional activities on his own, including telemarketing (tr. 69), advertising (tr. 51, 62–63), sending out announcements of his new office location (tr. 107) and purchase of business cards (tr. 57); he pays for his own fidelity bond and carries errors and omissions insurance (tr. 78, 125). Also, plaintiff filed 1099 tax forms. Defendants did not withhold social security or other taxes. Tr. 127–128. There is no evidence that defendants provide annual leave, sick leave or disability leave. By the terms of the Agreement, defendants have agreed to arrange for group life and comprehensive medical insurance and to pay a portion of the premium if the agent elects to apply for coverage under these plans. The balance of the premium is paid by the agent if covered under these plans. Tr. 473.

It is undisputed that the Agreement may be terminated by either the agent or Farmers upon three months written notice. Defendants contend that the only limitations upon plaintiff's business with defendants are set forth in the Agreement. The Agreement provides that authorized representatives of defendants may review and examine agency records for the purpose of verifying compliance with the Agreement. I agree with de-

fendants that retaining the right to examine and audit agents' records in order to assure compliance with federal, state and local laws does not invalidate the independent contractor relationship.

The test for an independent contractor versus an employee was set out in *Great American Ins. Co. v. General Ins. Co. of America*, 257 Or. 62, 475 P.2d 415 (1970). The court stated:

> Generally, the test for determining whether one is a servant or an independent contractor is based not on the actual exercise of control by the employer, but on the right to control.... The exercise of some limited control by the employer over the work being done will not necessarily make the worker an employee rather than an independent contractor.... The test of right to control does not refer to the right to control the results of the work but rather to the right to control the manner and means of accomplishing the result.

*Id.* at 66–67, 475 P.2d 415 (citations omitted).

On evidence very similar to the facts at bar, Judge Burns held in *Jenkins, supra* that plaintiff was an independent contractor and not an "employee." Judge Burns noted that plaintiff Jenkins did not receive a salary or wages; his only compensation came from commissions; and Travelers advised the trainees that they were self-employed and told they had to file the appropriate reports required by the Social Security Act. Judge Burns found it significant that Travelers did not withhold taxes on trainees and Jenkins did not report any withholding, also that Jenkins did not have to report his daily activities. He received some assistance and training on the job but "virtually no supervision." Judge Burns found that the "classic indicia of employer-employee relationship are missing. The alleged employer lacked the right to control or direct the alleged employee; the alleged employee received no salary and declared no income. In classical terms, Jenkins was a self-employed independent contractor." *Id.* at 951–52.

I also rely on the Agreement for my finding that plaintiff is an independent contractor. That Agreement (Agent Appointment Agreement) provides:

> Nothing contained herein is intended or shall be construed to create the relationship of employer and employee; rather, the Agent, is an independent contractor for all purposes.

I find as a matter of law that plaintiff was not an employee, but an independent contractor for defendants. In order to state a claim under the handicap discrimination statutes, there has to be an employer/employee relationship asserted.

■ Further, I find no evidence that defendants knew of plaintiff's handicap. Defendants rely on plaintiff's deposition testimony where he states that his health is "something that has always been very private to me and not something I like to discuss with anybody, very many close friends or anything." Plaintiff's Dep., Transcript p. 611. Plaintiff testified that he never discussed his HIV condition with anyone at defendant companies and does not recall whether he ever discussed his hemophilia with his district manager. Transcript, p. 608.

In order to be within the protected class of handicapped persons under state and federal discrimination statutes, plaintiff must establish that defendants knew or should have know that he was handicapped. *Pridemore v. Rural Legal Aid Soc.*, 625 F.Supp. 1180 (S.D.Ohio 1985) (court granted summary judgment for defendant holding that plaintiff had failed to establish that the defendant knew or should have known that the plaintiff suffered from cerebral palsy).

Like *Pridemore*, the plaintiff here contends that defendants are liable for discriminating against him on the basis of an unknown handicap. The HIV virus and hemophilia, like cerebral palsy, are not conditions that can be ascertained from outward appearances.

Plaintiff also contends that defendants knew of plaintiff's handicapped status during the time they engaged in the alleged misconduct because defendants provided a group health care plan for all of its insurance agents. That plan was administered by Aetna Insurance Company. Plaintiff states that

Aetna provided defendants with notification of large claims and that such notification was provided at $25,000 increments. As of April 30, 1990, plaintiff's cumulative lifetime benefits paid by Aetna were $76,554.77. However, plaintiff fails to present any evidence that the specific defendants charged in this case had any knowledge whatsoever of Aetna's health care payments to plaintiff.

Defendants' summary judgment motion is granted as to this claim.

## 2. *Breach of Contract*

█ Plaintiff alleges that from the spring of 1990 to the present, defendants have "created imaginary complaints or escalated minor complaints to fabricate a record which would support termination." PTO, p. 6. Plaintiff also alleges that defendants have "failed and neglected to perform the conditions of the contract to be performed on their part in such wanton and wilful manner that they breached the covenant of good faith and fair dealing implied in plaintiff's contract." *Id.*

Plaintiff lists nine examples of defendants' alleged wrongful conduct in violation of his contract, including defendants' contention that plaintiff forged his father's name to the back of an annuity surrender check after defendants had facts to show that plaintiff had no intent to defraud but merely an intent to complete a business transaction that his father had previously authorized in writing.

Plaintiff argues that the existence of these "exaggerated and sometimes fabricated complaints" raise a question of fact as to whether defendants committed the type of conduct that would breach the implied covenant of good faith and fair dealing in plaintiff's employment contract. I agree. There are many disputed facts surrounding the alleged complaints made to defendants about plaintiff's performance as an insurance agent and regarding plaintiff's performance as an agent. I deny defendants' summary judgment motion on this claim.

## 3. *Slander Per Se*

Defendants argue that plaintiff's slander per se claim should be dismissed as a matter of law, or alternatively, plaintiff's claim for

punitive damages on this claim should be dismissed.

Plaintiff contends that "defendants made defamatory comments about plaintiff's business practices to non-company persons and/or entities that exceed the scope of any privilege and which were false. Because of defendants' actions, plaintiff was forced to defend his professional and personal reputation to colleagues and strangers, suffering consequent embarrassment, humiliation, and economic loss of substantial value [not less than $50,000]." PTO, p. 10. Plaintiff also contends that defendants' actions were "wilful, wanton and in violation of societal norms, thereby justifying the imposition of exemplary damages [of ten million dollars]." *Id.*

[4] I find that all but two of the remarks which plaintiff claims constitute slander per se were statements made among plaintiff's co-workers and manager and not to third parties. An essential element of a claim for slander or defamation is "publication of a statement to a third person." *State ex rel. Advanced Dictating Supply, Inc. v. Dale,* 269 Or. 242, 257, 524 P.2d 1404 (1974). No publication to a third person occurs where the allegedly defamatory statements are made to defendant's officers or employees.

█ In *Rice v. Comtek Mfg. of Oregon, Inc.,* 766 F.Supp. 1550 (D.Or.1990), this court held that there was no publication of statements to third parties in that they were made by a corporate employee to another corporate employee during the performance of duties. *Id.* at 1551–52. All statements that plaintiff alleges were slanderous, that were made to co-workers, were not "published" to third persons and therefore, do not constitute slander or libel as a matter of law. That disposes of all but two of plaintiff's claims for slander.

█ Plaintiff next alleges that he was slandered by defendants when they sent a "first notice of suspected fraud" to the bonding company, Royal Insurance. Copies were also distributed internally within Farmers to a limited number of Farmers management representatives. Tr. 564–566. Defendants argue that an essential element of a claim for defamation is "falsity" of the statement.

*Fowler v. Donnelly*, 225 Or. 287, 358 P.2d 485 (1960). Here, plaintiff has admitted that he copied an insured's signature to an annuity surrender check of $46,006.70 made payable to insured and placed the check in plaintiff's account. Tr. 293, 294, 298, 302–304. Plaintiff also admitted that when he was questioned about the check he claimed his father had written the check, which was not true. Tr. 301–302. Plaintiff later admitted forging the signature. Tr. 414. Plaintiff also admitted that it was not proper to sign another person's name to the check. Tr. 306. Plaintiff admitted that the reason for signing his father's name to the check was to prevent his father from coming into possession of the check. Tr. 386.

I find that any alleged defamatory statements regarding the suspected fraud are true, as evidenced by plaintiff's own testimony. Therefore, defendants are entitled to summary judgment on plaintiff's claim for defamation as to the notice of suspected fraud.

■ Finally, as for the statements allegedly made by Dean Page, plaintiff's former office partner, defendants argue that they are not liable for those statements. Page is an agent for defendants and an independent contractor. Defendants contend that there is no evidence to show that he was authorized to make statements on behalf of defendants. Plaintiff does not rebut defendants' argument on this matter. I agree with defendants and grant summary judgment on this issue for defendants.

### 4. *Intentional Infliction of Emotional Distress*

Plaintiff alleges that defendants have subjected him to "severe emotional distress in that he was vilified and humiliated before colleagues and co-workers, his business was under constant scrutiny for no good cause, and his agency activities were flagged in such a way that administrators and officers would ridicule him to clients and in-house personnel at will." PTO, p. 12. Plaintiff alleges that the defendants, on two occasions, "threatened to ruin plaintiff's credit record, prosecute him for criminal activity when they knew plaintiff had not committed a crime, and threatened to ruin plaintiff's good name and standing in the community and in his home." *Id.*

■ In order to establish a claim for intentional infliction of emotional distress, plaintiff must prove that defendants intended to inflict severe emotional distress and that defendants' actions consisted of an extraordinary transgression of the bounds of socially tolerable conduct. *Sheets v. Knight*, 308 Or. 220, 236, 779 P.2d 1000 (1989).

■ I find that the parties have markedly different versions of the meetings that occurred between plaintiff and defendants when defendants asked plaintiff to resign. I agree with plaintiff that it is for the jury to decide if defendants' conduct was outrageous. Plaintiff alleges that on May 11, 1990, he met with defendants to discuss the Zenos Dutson matter. At the time of that meeting, defendants were aware that plaintiff had recently undergone life-threatening surgery. Despite plaintiff's known, weakened condition, defendants' employee "interrogated, harassed, and coerced plaintiff until he succumbed to their demands that he submit his resignation." Plaintiff's Memo in Opposition, p. 30. Plaintiff alleges that during this meeting, defendants threatened to destroy plaintiff's personal and business credit record and make it impossible for plaintiff to continue employment in the insurance industry in the future. Defendants also allegedly threatened to humiliate plaintiff in the community and before his family and to report him to the State Insurance Commissioner as well as the Washington Attorney General.

If a jury found plaintiff's version of the facts to be true, then he may well have stated a claim for intentional infliction of emotional distress. Due to the parties differing versions of their various meetings, it is appropriate for the trier of fact to decide which version is credible. Defendants' summary judgment motion on this claim is denied.

### CONCLUSION

Defendants' summary judgment motion is granted as to plaintiff's handicap and slander claims, it is denied as to plaintiff's breach of

contract and intentional infliction of emotion distress claims. Further, plaintiff's Motion to Amend his Complaint is denied as untimely and unnecessary. Defendants' Motion to Strike Plaintiff's Proposed Amendments to Complaint is granted.