Shawn L. SMITH, Plaintiff,

v.

DOVENMUEHLE MORTGAGE, INC., Defendant.

No. 94 C 139.

United States District Court, N.D. Illinois, Eastern Division.

June 10, 1994.

Paul K. Vickrey, Kathleen M. Burch, Hopkins & Sutter, P.C., Chicago, IL, for plaintiff.

James M. Gecker, Neil G. Wolf, Ross & Hardies, P.C., James R. Daly, Thomas P. McNulty, Jones, Day, Reavis & Pogue, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

The defendant, Dovenmuehle Mortgage, Inc., moves for summary judgment on plaintiff's claims for violation of Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12111 *et seq.*, ("ADA") (Count I), and intentional infliction of emotional distress (Count III). For the reasons set forth below, defendant's motion is denied.

### STATEMENT OF FACTS

The following facts are undisputed unless otherwise noted. Plaintiff Shawn Smith was an employee of Defendant Dovenmuehle Mortgage, Inc. ("Dovenmuehle") from February 1985 until the date of his termination on October 8, 1992. Complaint ¶ 6. Smith was diagnosed as being infected with Human Immunodeficiency Virus ("HIV") in March 1990. Joint Final Pretrial Order, Exhibit A–1 ("Stipulated Facts"), ¶ 3. At some point prior to his termination, Smith's HIV infection ripened into full-blown AIDS. The parties disagree on whether Smith told anyone at Dovenmuehle about his condition prior to his termination. Smith claims that in July 1992 he told his immediate supervisor, Mary Przybyla, that he had AIDS and that from that point on, she was distant and hostile to Smith. Plaintiff's Local Rule 12(n) Statement ("Plaintiff's Facts"), ¶ 17; Complaint ¶¶ 12, 13. Dovenmuehle denies that Przybyla was aware that Smith had AIDS prior to his termination. Defendant's Response to Plaintiff's Local Rule 12(n) Facts, ("Defendant's Response"), ¶ 17.

Smith's seven-year tenure at Dovenmuehle was marked by several promotions. Complaint ¶ 6. In December 1990 he was promoted to Manager of the Collections Department, and in May 1991 he became the Assistant Vice President and Manager of the Customer Service Department, the position he held at the time of his termination. Stipulated Facts, ¶¶ 2, 4. In early 1992, Smith was working on a project involving the recertification of 12,500 GNMA loans. Plaintiff's Facts, ¶ 5. On September 16, 1992, GNMA's outside auditors sent Dovenmuehle a list of loans which were past due for recertification. Stipulated Facts, ¶ 10. The letter informed Dovenmuehle that it must complete the recertification by October 16, 1992 or risk losing the entire GNMA portfolio. Plaintiff's Facts, ¶ 6. In order to meet the deadline, Dovenmuehle incurred approximately $240,000 in costs. Stipulated Facts, ¶ 12. The parties disagree about who was to blame for these events. According to Dovenmuehle, Smith was directly responsible because he failed to inform his supervisors of the backlog. Defendant's Response, ¶ 27. Smith, however, claims that Dovenmuehle's management knew that the project would not be completed on time. Plaintiff's Facts, ¶ 6. Dovenmuehle fired Smith on October 8, 1992. Stipulated Facts, ¶ 13.

After he was fired, Smith applied for, and was denied, benefits under Dovenmuehle's disability program. Stipulated Facts, ¶ 20. Smith also applied for disability benefits from the Social Security Administration ("SSA") on October 26, 1992. *Id.,* ¶ 17. In his application, Smith stated that he was suffering from AIDS, peripheral neuropath,

and HIV wasting syndrome, and that his condition made him stop working on October 7, 1992. Defendant's Local Rule 12(m) Facts ("Defendant's Facts"), ¶ 8, Exhibit 5 at 1. Smith's doctor, Andrew Pavlatos submitted a medical evidence report to the Illinois Bureau of Disability Determination Services on or about December 21, 1992 stating that "due to impaired cognitive skills [Smith] can only [d]o ADLS [activities of daily living]." *Id.,* ¶ 8, Exhibit 3.

The SSA awarded Smith monthly disability benefits from October 7, 1992. Stipulated Facts, ¶ 21. Although Smith claims that by November 1992 he had recovered from his disability sufficiently to perform the essential functions of his former job, he claims he was unable to find another job in his field because his work record was marred by his allegedly pretextual termination. Plaintiff's Facts, ¶ 27. In March 1994, Smith obtained a job as a full-time administrator for a non-profit organization. Stipulated Facts, ¶ 22. He has informed the SSA of his current employment status and continues to receive social security benefits as part of a nine-month trial period. Plaintiff's Facts, ¶¶ 30, 31.

After obtaining a Notice of Right to Sue from the EEOC on December 15, 1993, Smith filed this lawsuit against Dovenmuehle on January 21, 1994. Smith alleges that Dovenmuehle terminated him and denied him benefits because he has AIDS in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111 *et seq.* ("ADA") and the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA"). In addition, Smith invokes this court's supplemental jurisdiction over his state common law claim for intentional infliction of emotional distress. Smith is seeking back pay, attorney's fees, costs, punitive damages, reinstatement to his former position, and an injunction enjoining Dovenmuehle from engaging in any discriminatory practices against employees with AIDS. Dovenmuehle has moved for summary judg-

ment on the ADA claim, arguing that Smith is judicially estopped from recovering under the ADA because he has represented to the SSA that he is "disabled" and receives social security benefits as a result. Dovenmuehle further argues it is entitled to summary judgment on Smith's claim for intentional infliction of emotional distress because the conduct alleged was not outrageous as a matter of law.[1]

*ANALYSIS*

Summary judgment is proper only if the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). A genuine issue for trial exists only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 258, 106 S.Ct. 2505, 2515, 91 L.Ed.2d 202 (1986). The court must view all evidence in a light most favorable to the nonmoving party, *Valley Liquors, Inc. v. Renfield Importers, Ltd.,* 822 F.2d 656, 659 (7th Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987), and draw all inferences in the nonmovant's favor, *Santiago v. Lane,* 894 F.2d 218, 221 (7th Cir.1990). However, if the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11; *Flip–Side Productions, Inc. v. Jam Productions, Ltd.,* 843 F.2d 1024, 1032 (7th Cir.), *cert. denied,* 488 U.S. 909, 109 S.Ct. 261, 102 L.Ed.2d 249 (1988). This court's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. There is no issue for trial "unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511. Summary judgment must be granted "against a party who fails to make a showing sufficient to establish the

---

1. Originally, defendant argued that summary judgment was proper because plaintiff's claim for intentional infliction of emotional distress was preempted by ERISA. Plaintiff has since stipulated that, insofar as his claim for intentional infliction of emotional distress is based upon an alleged violation of ERISA, it is preempted by ERISA. *See* Joint Final Pretrial Order, Exhibit B–1, at 1 n. 1. Therefore, the court will treat that issue of law as having been resolved in favor of the defendant.

existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## A. *ADA Claim*

 Defendant first argues that it is entitled to summary judgment on plaintiff's ADA claim for back pay and reinstatement because plaintiff is judicially estopped from proving that he is qualified for his former position because he has represented to the SSA that he was disabled and could not perform his job.[2]

 The doctrine of judicial estoppel prevents a party who has successfully maintained a position in one proceeding from asserting the contrary in another proceeding. *Levinson v. United States*, 969 F.2d 260, 264 (7th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 505, 121 L.Ed.2d 441 (1992). The function of judicial estoppel is to protect the integrity of the judicial process and prevent it from being manipulated by "chameleonic litigants." *Id.* Judicial estoppel consists of three elements: the later position must be clearly inconsistent with the earlier position, the facts at issue must be the same in both cases, and the party to be estopped must have been successful in convincing the first court to adopt its position. *Id.* Because a genuine issue of material fact exists as to whether the position taken by plaintiff before the SSA is inconsistent with the position taken by plaintiff in this lawsuit, defendant's motion for summary judgment on the ADA claim is denied.

The Seventh Circuit recently has stated that a finding of disability by the Social Security Administration can not be construed as a judgment that the plaintiff is unable to do his job. *Overton v. Reilly*, 977 F.2d 1190, 1196 (7th Cir.1992). The district court in

*Overton* originally granted summary judgment for the defendant due, in part, to the SSA's finding that the plaintiff was entitled to disability benefits because he was " 'unable to perform any substantial gainful activity.' " The Court of Appeals reversed. The court rejected the very argument defendant proffers here:

> [E]ven if a finding of disability could have preclusive effect in a private lawsuit, such a finding is consistent with a claim that the disabled person is "qualified" to do his job under the Rehabilitation Act.

*Id.*[3] The court further recognized that the SSA's decision to award disability benefits does not necessarily translate into a determination that the recipient is unable to find work within the economy. Even if the SSA does make such a determination, that does not necessarily mean that the claimant will not find a job.[4] *Id.*

In the present case, the SSA awarded Smith disability benefits based on his representations that he was suffering from AIDS and that his condition had forced him to stop working. However, as stated in *Overton,* the SSA's decision to award benefits is not synonymous with a determination that plaintiff is not a "qualified individual" under the ADA. Nor does it amount to a determination that the plaintiff can not find work in the economy. This is particularly true in the present case because Smith has found another job as a full-time administrator.

Recent district court cases in this and other circuits have applied the same reasoning to cases factually similar to the present case. In *Kupferschmidt v. Runyon,* 827 F.Supp. 570 (E.D.Wis.1993), the defendant moved for summary judgment on plaintiff's claim under the Rehabilitation Act, arguing that "because other government agencies have concluded that Kupferschmidt was totally disabled at

---

**2.** For purposes of this motion, Dovenmuehle asserts that whether Smith actually suffers from a disability which prevents him from performing his job is immaterial. Defendant's Response, ¶¶ 22, 26.

**3.** The Rehabilitation Act of 1973 was the precursor to the ADA. Section 12117(b) of the ADA requires consistency between the two Acts.

**4.** Defendant attempts to distinguish *Overton* by arguing that the issue of judicial estoppel was never raised by the parties or considered by the court. However, the mere absence of a clear "judicial estoppel" label is of no consequence. The content of the opinion clearly pertains to the issue of judicial estoppel and to hold otherwise would be to exalt form over substance.

some time in the past, Kupferschmidt cannot prove that she is a 'qualified handicapped person' at the time she applied for reinstatement." The court, relying on *Overton*, rejected this argument and held that the fact that the plaintiff received social security and federal employee retirement system disability benefits did not preclude her from proving that she was a "qualified handicapped person" under the Rehabilitation Act. *Id.* at 574.

Similarly, in *Lawrence v. United States ICC*, 629 F.Supp. 819 (E.D.Pa.1985), plaintiff claimed that defendants' harassing conduct led to plaintiff's heart condition and subsequent retirement on medical disability. Prior to his retirement, plaintiff completed a disability retirement application in which he stated that he was " '[t]otally disabled' " and " 'unable to carry out the vigorous activity required by my position.' " The defendants moved for summary judgment, arguing, as defendant does here, that these representations judicially estopped plaintiff from asserting that he was now able to work, and that his disability was brought about by defendants' wrongful acts. The court rejected this argument and held that plaintiff's claim that he was now able to work was not inconsistent with his statements that he was not able to perform his job at the time he filled out his disability retirement application. Likewise, the court rejected defendants' argument that plaintiff's current acceptance of disability benefits precluded him from recovering: "A retiree's acceptance of a disability annuity should not affect his attempt to redress an alleged violation of his constitutional rights. Nor should the mere receipt of civil service disability benefits prevent an individual from seeking a new job with the government." *Id.*

Defendant's position would place plaintiff in the untenable position of choosing between his right to seek disability benefits and his right to seek redress for an alleged violation of the ADA. Moreover, it would conflict with one of the stated purposes of the ADA which is to combat "the continuing existence of unfair and unnecessary discrimination and prejudice [which] denies people with disabilities the opportunity to compete on an equal basis and to pursue those opportunities for which our free society is justifiably famous, and costs the United States billions of dollars in unnecessary expenses resulting from dependency and nonproductivity." 42 U.S.C. § 12101(a)(9).

Moreover, the cases relied upon by defendant, *Brown v. National Railroad Passenger Corp.*, No. 86 C 10284, 1990 WL 119558 (N.D.Ill. Aug. 14, 1980) and *Muellner v. Mars, Inc.*, 714 F.Supp. 351 (N.D.Ill.1989), are inapposite. In both those cases, the plaintiffs first argued to the SSA that they were disabled and unable to perform their jobs in order to obtain social security disability payments. They then turned around and argued to the court that they were entitled to back pay and reinstatement to those very same jobs because they were not, and had never been, disabled. As both the *Brown* and *Muellner* courts recognized, to deny summary judgment in those circumstances would be "to countenance the very intentional self-contradiction and abuse of the courts which judicial estoppel was designed to prevent." *Muellner*, 714 F.Supp. at 359; *see also Brown*, 1990 WL 119558, at *6.

Those are not the facts presented here. Plaintiff and his doctor both testified that although plaintiff was disabled and unable to work following his termination, he has since recovered from his disability. Plaintiff's Facts, ¶¶ 24, 26. These are the very same facts which the *Muellner* court distinguished from the case then before it: "[A] substantial period of time has elapsed since she represented to the SSA that she was disabled. Yet, Muellner does not claim she has recovered. If she had the court's position might be much different." 714 F.Supp. at 359 (cites omitted). *See also Lawrence*, 629 F.Supp. at 822 (even if plaintiff's statements were contradictory, "they were made twenty-two months apart, giving rise to the possibility that he recovered.... It is entirely possible that plaintiff's condition had improved when he filed suit, and for the purposes of this motion, it must be so assumed"). Thus, unlike the plaintiffs in *Brown* and *Muellner* who admitted lying to the SSA, plaintiff has offered a plausible explanation for the divergence between his representation to the SSA and the arguments he is making now.

No inconsistency presenting itself under these facts, the court concludes that judicial estoppel does not apply. Defendant's motion for summary judgment on plaintiff's ADA claim is denied.

### B. Claim for Intentional Infliction of Emotional Distress

■ Dovenmuehle further argues that it is entitled to summary judgment on Smith's state common law claim for intentional infliction of emotional distress because the undisputed facts regarding Dovenmuehle's termination of Smith fail to establish extreme and outrageous conduct.

■ In order to state a claim for intentional infliction of emotional distress under Illinois law, the plaintiff must prove three things: that the conduct was extreme and outrageous, that the actor intended or knew that the conduct would inflict severe emotional distress, and that the conduct did in fact cause such distress. *McGrath v. Fahey*, 126 Ill.2d 78, 86, 127 Ill.Dec. 724, 727, 533 N.E.2d 806, 809 (1988). Among the relevant factors for determining whether a claim exists are the power and influence wielded by the defendant, the legitimate reasons the defendant might have had for taking the offensive action, and the defendant's awareness of the plaintiff's susceptibility to physical or mental stress. 126 Ill.2d at 86–90, 127 Ill.Dec. at 727–29, 533 N.E.2d at 809–811.

Although defendant has cited several cases granting summary judgment on claims for intentional infliction of emotional distress, defendant has failed to cite any case in which summary judgment was granted to an employer accused of firing an employee because he has AIDS. Nor has plaintiff cited any case in which summary judgment was denied to an employer accused of firing an employee because he has AIDS. The court's own research reveals that this issue is one of first impression in this Circuit, and most other Circuits as well. In the absence of controlling precedent, this court finds the reasoning

in *Dutson v. Farmers Ins. Exchange*, 815 F.Supp. 349 (D.Or.1993) persuasive.

In *Dutson*, the plaintiff, a hemophiliac afflicted with the HIV virus, sued his employers for intentional infliction of emotional distress for discriminating against him on the basis of his disability. Specifically, plaintiff alleged that his employers " 'vilified and humiliated [him] before colleagues and co-workers, his business was under constant scrutiny for no good cause,' " and that, in general, his employers " 'interrogated, harassed, and coerced plaintiff until he succumbed to their demands that he submit his resignation.' " *Id.* at 354. The court concluded that there was no evidence that defendants knew of plaintiff's handicap. *Id.* at 352. Nevertheless, the court, noting that the parties had "markedly different versions" of the events, denied defendants' motion for summary judgment. Under the factual circumstances presented, the court held, "it is for the jury to decide if defendants' conduct was outrageous." *Id.* at 354.

Similarly, in this case, the plaintiff and defendant offer startlingly different versions of the events surrounding plaintiff's termination. Smith specifically alleges that Dovenmuehle fired him because he has AIDS. Complaint ¶ 16. According to Smith, Dovenmuehle knew he had AIDS because he revealed his condition to his supervisor, Mary Przybyla, three months before Dovenmuehle fired him. *Id.*, ¶ 12. Thus, according to Smith, Dovenmuehle was on notice that Smith is peculiarly susceptible to emotional distress,[5] which is a natural consequence of the physiological trauma associated with this critical illness. *See* Center for Disease Control, "1993 Revised Classification System for HIV Infection and Expanded Surveillance Case Definition for AIDS Among Adolescents and Adults," 41 MMWR No. RR–17 (1992) (effective January 1, 1993). Smith further alleges that the emotional distress he experienced following his termination led him to attempt suicide and to become depressed. Plaintiff's Response In Opposition to Summary Judgment, at 12–13. Finally, Smith

---

5. Under Illinois law, "a defendant's awareness that the plaintiff is peculiarly susceptible to emotional distress, by reason of some physical or mental condition or peculiarity" is a "serious consideration" weighing in favor of a determination that a defendant's conduct is extreme and outrageous. *McGrath*, 126 Ill.2d at 89–90, 127 Ill.Dec. at 729, 533 N.E.2d at 811.

claims that the reason given by Dovenmuehle for firing him—that he had failed to complete the GNMA loan pool recertification project on time—is a false pretext Dovenmuehle "concocted", even though it knew that by doing so, Smith effectively would be precluded from finding another position in his field. *Id.* at 13.

Given that Dovenmuehle denies each of these allegations, it is clear that genuine issues of material fact exist. Moreover, in reviewing a motion for summary judgment, the court is obligated to view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Santiago,* 894 F.2d 218, 221 (7th Cir.1990). Having done so, the court concludes that Smith has met the minimum threshold for alleging facts sufficient to support a claim for "extreme and outrageous" conduct by Dovenmuehle. Therefore, judgment as a matter of law is not appropriate at this juncture.[6]

## CONCLUSION

For the reasons given above, defendant's motion for partial summary judgment is denied.

---

6. Plaintiff should note that he will be required at trial to set forth in far greater detail the facts upon which he is relying in order to satisfy the more stringent standard under Rule 50(a)(1) of the Federal Rules of Civil Procedure.