**Dana LEVAR, Plaintiff,**

v.

**FREEMAN DECORATING CO.; Greyhound Exposition Services, Inc.; United Steelworkers of America Drapery, Slip Cover, Window Shade, Venetian Blinds, Exhibition, Flag and Bunting Decorators Union Local 17U; Thomas Thomas, as an Individual and Agent of Local 17U; and Eric Griffiths, as an Individual and Agent of Local 17U, Defendants.**

**No. 95 C 3091.**

United States District Court,
N.D. Illinois,
Eastern Division.

June 26, 1997.

## MEMORANDUM OPINION AND ORDER

HOLDERMAN, District Judge:

Plaintiff Dana Levar has filed a complaint alleging discrimination and retaliation in violation of the American with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, as well as state law claims of battery and retaliation pursuant to the Illinois Workers Compensation Act, Defendants Greyhound Exposition Services, Inc. (GES), and Freeman Decorating Co. (Freeman) have both filed motions for summary judgment. Upon evaluation of the appropriate materials and for the reasons stated herein, defendants' motions for summary judgment are granted as to plaintiff's claims for all acts occurring from February 22, 1994 through May 13, 1994, and the motions are denied as to all remaining claims.

## STATEMENT OF FACTS

Plaintiff aggravated a back condition on January 13, 1994 while working for Freeman. In May 1994, plaintiff sought benefits from

his union's health fund for the time off during his injury. On May 13, 1994, plaintiff submitted a claim form to the union which stated that he had attempted to resume work on April 18, 1994. The claim form was accompanied by several other documents, including a physician's certificate which stated that plaintiff was still totally disabled and unable to work as of May 13, 1994. When plaintiff did not receive any benefits and complained to his union, plaintiff was told to resubmit the benefits application.

On October 13, 1994, plaintiff resubmitted his application with identical documents except for a revised claim form, in which plaintiff changed the description of his past health status of May 13, 1994. Question 8 on the claim form was "Are you still totally disabled?" (Exh. A of Pl. Appx. to Pl. Resp.). On May 13, plaintiff wrote, "No (am back with restrictions)," while in October plaintiff left the answer blank. *Id.* The next question asked, "If not, when were you able to resume work?" *Id.* In May plaintiff wrote, "4–18 4–25 5–5 1994 (all dates I was refused employment because of my disability)," while in October plaintiff again left the answer blank. *Id.* The application next asked, "If still disabled, when do you expect to resume work?" *Id.* In May plaintiff stated, "I have tried but referral halls not placing me in jobs that contractors will accept me." *Id.* In October plaintiff responded, "When doctor releases me with restrictions." *Id.* In December 1994, plaintiff received a check for $8,283.68 representing "time loss" benefits for the period of February 22, 1994 to May 22, 1994[1].

### DISCUSSION

After plaintiff was able to find work in June 1994 at another company, plaintiff filed a complaint that is now modified by a Bill of Particulars which the parties have treated as an amended complaint. Plaintiff alleges that defendants, GES and Freeman, discriminated against him by refusing to employ him from April 18, 1994 through the present because of his disability—his back condition—as well as for retaliation against plaintiff's

filing of his ADA and worker's compensation claims. Plaintiff also alleges that from September 1992 through January 1994, GES refused to employ him because of his back condition. Lastly, plaintiff alleges that Freeman failed to properly accommodate plaintiff's disability while he worked for Freeman from October 8, 1993 to January 13, 1994. Defendants have filed motions for summary judgment which claim that (1) the older allegations against GES are time-barred, (2) plaintiff has no evidence regarding any tortious acts of Freeman prior to April 1994, (3) plaintiff is judicially estopped from claiming that he could work from January 14, 1994 through May 13, 1994, and thus defendants could not have discriminated against him during this period, and (4) plaintiff is also judicially estopped from claiming discrimination from May 14, 1994 through the present.

### ANALYSIS

#### I. *GES has not Shown that Plaintiff's Allegations are Time–Barred*

Summary judgment is appropriate only if there remains no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Testerman v. EDS Technical Products Corp.,* 98 F.3d 297, 301 (7th Cir.1996). The non-moving party is entitled to the benefit of all reasonable inferences. *Id.* GES contends that plaintiff has alleged only two days when discrimination occurred—September 5, 1992 and April 22, 1994—and that the former incident is time-barred because plaintiff did not file his complaint with the EEOC within the 300 days allowed. GES' motion, though, ignores several of plaintiff's allegation against GES. In paragraph 55 of the Bill of Particulars, plaintiff alleges that GES received a letter dated October 8, 1993 which demanded that plaintiff be employed and accommodated by GES. In the next paragraph, plaintiff alleges, "After receiving the letter ... GES continued to discriminate against Levar under the ADA by refusing to refer or employ Levar." Pl. Bill of Part. ¶ 56.

---

1. The parties have offered no explanation for the choice of these particular dates. Defendants have not shown that the health fund relied on plaintiff's submission of the October 10, 1994 form in its decision to award benefits.

■ Examining plaintiff's allegations in total, GES has not shown that summary judgment is appropriate. Under the "continuing violation" theory, potentially time-barred allegations may be allowed when the employer's decision takes place over a period of time, making it difficult to pinpoint the exact day a violation occurred. *Selan v. Kiley,* 969 F.2d 560, 565 (7th Cir.1992). While GES recognizes the "continuing violation" theory, GES only argues that plaintiff's 1992 and 1994 allegations involve two distinct non-continuous events. It is not readily apparent, though, that plaintiff's 1992 and 1993 allegations involve isolated actions. The 1993 acts are within the 300–day requirement, and thus plaintiff's 1992 allegations would be allowed if linked with the later acts. See *id.* at 564. Considering that the question of when a discriminatory act occurs is a question of fact (*Lever v. Northwestern University,* 979 F.2d 552, 553 (7th Cir.1992), *cert. denied,* 508 U.S. 951, 113 S.Ct. 2443, 124 L.Ed.2d 661 (1993)), the court cannot say that a rational factfinder could not find the 1992 and 1993 actions linked. Because GES' motion has not sufficiently established the undisputed facts that would entitle it to summary judgment, its motion for summary judgement concerning the alleged acts of 1992 is denied.

## II. *Plaintiff has Provided Evidence of Discriminatory Acts by Freeman from October 1993 to January 1994*

■ Freeman moves for summary judgment on the basis that plaintiff has no evidence to sustain its claims against Freeman for the period from October 1993 to January 1994. Plaintiff has responded with evidence—his own affidavit—that Freeman refused to assign plaintiff to positions which could accommodate his disability even though such positions were available. Freeman has not claimed that plaintiff's affidavit is not based on personal knowledge or would not be admissible evidence, and thus the affidavit is sufficient to create a genuine issue of fact as to plaintiff's claims. Accordingly, summary judgment on the claims from October 1993 to January 1994 is denied.

## III. *Plaintiff is Judicially Estopped from Pursuing his ADA and Retaliation Claims for the Period of February 22, 1994 through May 13, 1994*

■ Defendants contend that because plaintiff's disability application stated that he could not work from January 14, 1994 through May 13, 1994, judicial estoppel should bar all claims based on defendants' acts during this period. Judicial estoppel is an equitable concept to prevent the perversion of the judicial process. *Medcom Holding Co. v. Baxter Travenol Laboratories, Inc.,* 106 F.3d 1388, 1396 (7th Cir.1997). The estoppel applies where intentional self-contradiction is being used as a means of obtaining an unfair advantage. *Id.* Under the doctrine, a litigant is forbidden to obtain a victory on one ground and then repudiate that ground in a different case in order to win a second victory. *Chaveriat v. Williams Pipe Line Co.,* 11 F.3d 1420, 1427 (7th Cir. 1993). Though called judicial estoppel, the doctrine also applies to administrative proceedings where a party obtains a favorable order that he seeks to repudiate in a subsequent judicial proceeding. *Id.* The objective of judicial estoppel is to prevent situations from arising in which one of two related decisions has to be wrong because a party took opposite positions and won both times. *Id.* By making a party choose one position irrevocably, the doctrine of judicial estoppel raises the cost of lying. *Id.* at 1428.

■ In this matter, plaintiff took the position in his October 1994 benefits application that he had been totally disabled between January 14, 1994 and May 13, 1994. Plaintiff responded to the question—"If still disabled, when do you expect to resume work?"—by stating, "When doctor releases me with restrictions." (Exh. A of Pl. Appx. to Pl. Resp.). This answer unambiguously takes the position that as of May 13, 1993, plaintiff was still disabled and could not resume work until his doctor released him with the necessary restrictions. Plaintiff then acquired benefits for the period of February 22, 1994 through May 13, 1994 that he had sought in his application. Thus, plaintiff is judicially estopped from repudiating the position he

successfully took in his benefits application[2]. This case is very similar to *DeGuiseppe v. Village of Bellwood*, 68 F.3d 187, (7th Cir. 1995), where the plaintiff also stated he was disabled to a pension board hearing. The *DeGuiseppe* court held, "We will accept a party's prevailing position in previous litigation (or, as here, quasi-judicial proceedings) as dispositive. Here DeGuiseppe's position was that he was disabled and unable to work in June 1991." *Id.*, 68 F.3d at 191. The *DeGuiseppe* court concluded, "He chose to take the money and run, and it would serve no equitable purpose to allow him to avoid the consequences of his own actions. We therefore analyze DeGuiseppe's retaliation claim with the understanding that he actually was disabled at the time of the pension hearing and is estopped now from arguing otherwise." *Id.* at 192. This court follows *DeGuiseppe* and holds that plaintiff is estopped from claiming that he could work at any point between February 22, 1994 and May 13, 1994.

Once it is established that plaintiff was unable to work during this time period, all claims based on defendants' actions during that time must fail. Since plaintiff could not work, he was not a qualified employee eligible for ADA protection during this period. *Miller v. Illinois Department of Corrections*, 107 F.3d 483, 484 (7th Cir.1997). In addition, as long as plaintiff did not work and was unable to work, plaintiff could not have suffered an adverse employment action. See *DeGuiseppe*, 68 F.3d at 192. With no adverse employment action taken against plaintiff from February 22, 1994 to May 13, 1994, plaintiff cannot sustain a retaliation claim under the ADA[3] or Illinois State law[4] for any of the defendants' actions during this period. See *Hunt–Golliday v. Metropolitan Water Reclamation District*, 104 F.3d 1004, 1014 (7th Cir.1997); *Hiatt v. Rockwell International Corp.*, 26 F.3d 761, 767 (7th Cir. 1994). Accordingly, defendants are entitled to summary judgment on all claims regarding actions taken against plaintiff from February 22, 1994 through May 13, 1994.

Plaintiff has numerous arguments as to why judicial estoppel should not apply in this matter. First, plaintiff contends that judicial estoppel must be pleaded as an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure. While Rule 8(c) does refer to "estoppel," the Seventh Circuit has stated, "The doctrine of estoppel is intended to protect the courts rather than the litigants, so it follows that a court, even an appellate court, may raise the estoppel on its own motion in an appropriate case." *In re Cassidy*, 892 F.2d 637, 641 (7th Cir.), *cert. denied*, 498 U.S. 812, 111 S.Ct. 48, 112 L.Ed.2d 24 (1990) (judicial estoppel barred claim); see also *DeGuiseppe*, 68 F.3d at 191–92 (appellate court affirmed on separate basis of judicial estoppel).

Plaintiff's second argument is that his ability to work has no bearing on his ADA retaliation claim. Plaintiff does admit, though, that an adverse employment action is a requirement to sustain a retaliation claim. See *Roth v. Lutheran General Hospital*, 57 F.3d 1446, 1459 (7th Cir.1995). While plaintiff claims that the adverse action was a refusal to hire, this allegation cannot sustain plaintiff's claim because there were no materially adverse consequences when plaintiff could not work anyway. See *DeGuiseppe*, 68 F.3d at 192 (summary judgment on retaliation claim where plaintiff was medically unfit

---

**2.** Plaintiff is not estopped from January 14, 1994 to February 22, 1994 because he did not obtain benefits for this period and thus did not win the "victory" necessary to apply judicial estoppel. This point is of little concern as plaintiff has made no allegations regarding this period.

**3.** While defendants addressed the ADA retaliation claim in their motions for summary judgment, their arguments in their supporting memoranda of law were quite limited. Under Local Rule 12(P), the failure to file a supporting memorandum is not a waiver of the motion, but the court on its own motion may move to strike the motion. Because plaintiff devoted over 1.5 pages of his response brief to specifically address the application of judicial estoppel to the ADA retaliation claim, the court finds that plaintiff has suffered no prejudice and chooses to address the motion on the merits.

**4.** This court need not determine whether to apply federal judicial estoppel or judicial estoppel based on Illinois law, as the doctrines are extremely similar and would have identical outcomes in this matter. See *Muellner v. Mars, Inc.*, 714 F.Supp. 351, 357 (N.D.Ill.1989).

to resume duties). Plaintiff also cites an age discrimination case where retaliation was not an issue—*McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995)—to argue that only the actual motivations of the defendants' decision should be considered, regardless of the plaintiff's ability to work. This contention is contradicted by *Miller,* where the Seventh Circuit held, "Under the ADA, the employer avoids all liability if the plaintiff would have been fired because incapable of performing the essential functions of the job, and the burden of proof on the issue of capability is on the plaintiff." *Id.,* 107 F.3d at 484 (improper motivation irrelevant when plaintiff could not work). As plaintiff is estopped from claiming that he could perform his job before May 13, 1994, the defendants are entitled to summary judgment as in *Miller*[5].

Plaintiff next claims that he has not taken a clearly inconsistent position on his ability to work. He first cites his answers of May 1994 as not being inconsistent, but plaintiff does not explain why these initial statements should blunt the force of his inconsistent October 1994 responses. Plaintiff also points to his statement from the October 1994 claim under the section entitled "Claimant's addition remarks," where plaintiff wrote, "Freeman should and my referral agent put people with disabilities on accommodating jobs, not on ones that will injure them." This comment, though, is not referring to plaintiff's ability to work but to Freeman's responsibility for plaintiff's injury of January 1994, as plaintiff himself states, "On or about January 13, 1994, as a result of . . . Freeman Decorating's refusal to accommodate Levar by assigning him jobs that were consistent with his restrictions, Levar aggravated his disability while working at Freeman decorating." Pl. Bill of Part., ¶ 60. Even without the context provided by plaintiff's Bill of Particulars[6], plaintiff's "additional remarks" would be inadequate to rebut his direct response in the claim form indicating that he was unable to work until he received a forthcoming clearance from his doctor.

Plaintiff also argues that his October 1994 claim form cannot form the basis of judicial estoppel because its statements were not made to a court or administrative agency. While plaintiff cites cases from other circuits, the Seventh Circuit is less restrictive in applying judicial estoppel. In *DeGuiseppe,* the court held that judicial estoppel applied to statements regarding disability made to a pension board hearing. *Muellner* likewise held that a disability application could be the basis of judicial estoppel, stating: "Muellner's application for disability benefits amounted to the first step in an administrative proceeding which was quasi-judicial in nature. . . . The SSA administrator's decision to pay disability benefits as sought by Muellner amounts to a quasi-judicial endorsement of Muellner's prior position of disability." *Id.,* 714 F.Supp. at 358. As ERISA—29 U.S.C. § 1002 *et seq.*—provides comprehensive procedural safeguards over private disability payments, including judicial oversight, this court finds no basis to differentiate the statements by plaintiffs in *Muellner* and *DeGuiseppe* from this plaintiff's statements at the initial stage of his benefits process.

Plaintiff next contends there is no evidence that his union forwarded the October 1994 claim form to the health fund or that the health fund relied on any of his statements from the October form. Neither of these possibilities, though, would alter the relevant facts for applying judicial estoppel. Judicial estoppel raises the cost of lying by preventing situations where one of two related decisions has to be wrong because a party took opposite positions and won both times. *Chaveriat,* 11 F.3d at 1427–28. Plaintiff applied for total disability benefits claiming that he was unable to work under any circumstances through May 13, 1994, and he received benefits for that period. In attempting to claim that he could work in April

---

**5.** Plaintiff also argues that his ADA discrimination claim must survive judicial estoppel due to *McKennon,* but this argument is likewise directly contradicted by *Miller.*

**6.** Plaintiff's response memorandum also adds context for the "additional remarks," stating that "from January 14, 1994 to April 18, 1994. . . . Levar was off work because Freeman's prior discriminatory acts aggravated his disability." Pl. Memo in Opp. to Freeman at 4 n1.

1994, plaintiff is taking a clearly inconsistent position and "playing fast and loose with the court," and thus judicial estoppel applies regardless of the extent of the health fund's reliance on plaintiff's statements. See *Cassidy*, 892 F.2d at 641; *Muellner*, 714 F.Supp. at 357–58 (issue is whether party intended acceptance of facts alleged in support of previous position).

Plaintiff's sixth contention is that judicial estoppel would conflict with two cases from this circuit—*Overton v. Reilly*, 977 F.2d 1190, (7th Cir.1992) and *Smith v. Dovenmuehle Mortgage, Inc.*, 859 F.Supp. 1138 (N.D.Ill.1994). These cases are inapposite because they dealt with a plaintiff's ability to work *after* a plaintiff had declared a disability at some time in the past. *Smith* explained that there is no clear inconsistency under these circumstances because the plaintiff may have recovered from his disability since his previous declaration, a "plausible explanation for the divergence." *Id.* at 1142. In the instant case, plaintiff's statement came after the relevant period at issue—that he *had been* unable to work—and thus there is no possibility that a recovery could satisfactorily explain the divergence in plaintiff's descriptions of his health as of May 13, 1994.

Lastly, plaintiff relies on an EEOC enforcement guidance paper that recommends courts to not apply judicial estoppel to ADA claims. The EEOC makes three arguments on why judicial estoppel should not apply: (1) a plaintiff's representations are not necessarily inconsistent, citing *Smith*, (2) judicial estoppel should apply only to judicial proceedings, and (3) the public policy goals of the ADA are more important than the public policy considerations supporting judicial estoppel. None of these arguments has any merit. The reasoning behind the first is that courts cannot be trusted to determine if a statement is clearly inconsistent with a plaintiff's claim. This court respectfully disagrees. The second argument conflicts with the law of the Seventh Circuit. As to the last argument, the Supreme Court recently reiterated that competing public policy considerations are best addressed to the Congress, not the courts. *Dunn v. Commodity Futures Trading Commission*, —— U.S.

——, ——, 117 S.Ct. 913, 921, 137 L.Ed.2d 93 (1997). As stated above, defendants are entitled to summary judgment on all claims regarding actions taken against plaintiff from February 22, 1994 through May 13, 1994.

## IV. *Plaintiff is not Estopped from Claims based on Acts Occurring after May 13.1994*

Defendants also want judicial estoppel to bar plaintiff's claims regarding acts after May 13, 1994 on the basis of plaintiff's submission of the physician's certificate stating that plaintiff was totally disabled as of May 13, 1994. The defendants' contention fails for two reasons. First, defendants have not claimed that plaintiff ever sought benefits for any time period past May 13, 1994. If a disability claim acted as a permanent bar to redress under the ADA, it "would place plaintiff in the untenable position of choosing between his right to seek disability benefits and his right to seek redress for an alleged violation of the ADA." *Smith*, 859 F.Supp. at 1142. Second, neither plaintiff nor his doctor made statements indicating that plaintiff was disabled after May 13, 1994, and thus plaintiff could have recovered from his disability after May 13, 1994 and been a qualified individual entitled to ADA protection. *Id.* Therefore, defendants' motion for summary judgment as to all claims involving acts after May 13, 1994 is denied.

## CONCLUSION

For the above stated reasons, defendants' motions for summary judgment are GRANTED as to the allegations of acts occurring from February 22, 1994 through May 13, 1994, and DENIED in all other respects. Plaintiff is ordered to file a First Amended Complaint in compliance with the Federal Rules of Civil Procedure which sets out plaintiff's claims as to defendants' alleged post-May 13, 1994 conduct for which plaintiff seeks relief. Plaintiff must file on or before July 8, 1997, and defendants to file an Answer thereto on or before July 22, 1997. The parties are urged to discuss the settlement of

this case and report on the status thereof on July 24, 1997 at 10:00 a.m.