**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

ETHLYN RICHARDSON,
Plaintiff-Appellant,

v.

FIRST CITIZENS BANK & TRUST
COMPANY,
Defendant-Appellee.

No. 97-1242

Appeal from the United States District Court
for the Eastern District of North Carolina, at Greenville.
Malcolm J. Howard, District Judge.
(CA-95-124-4-H)

Argued: March 4, 1998

Decided: June 3, 1998

Before LUTTIG and MICHAEL, Circuit Judges, and
HILTON, Chief United States District Judge for the
Eastern District of Virginia, sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** David Peter Voerman, DAVID P. VOERMAN, New
Bern, North Carolina, for Appellant. Samuel McKinley Gray, III,
WARD & SMITH, P.A., New Bern, North Carolina, for Appellee.
**ON BRIEF:** Buren R. Shields, III, DAVID P. VOERMAN, New
Bern, North Carolina, for Appellant. William Joseph Austin, Jr.,
WARD & SMITH, P.A., New Bern, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

The United States District Court for the Eastern District of North Carolina found that Ethlyn Richardson ("Richardson") failed to timely file her charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and dismissed Richardson's case. In her appeal, Richardson contends that the Court used the wrong date to determine the timeliness of her charge. This Court finds that Richardson failed to establish a prima facie case as to her claims under the Age Discrimination in Employment Act ("ADEA") and Americans with Disabilities Act ("ADA"), and cannot demonstrate that the employer's legitimate, non-discriminatory reason for her transfer was pretextual, we do not reach the issue of the timeliness of Richardson's charge and we affirm the ruling of the District Court on alternative grounds.

Richardson began work for First Citizens Bank & Trust Co. ("First Citizens") at its Grifton, North Carolina branch in 1952. In the fall of 1991, after the arrival of a new Branch Manager, Jerry Hannah ("Hannah"), Richardson's work was found inadequate. In November 1992, Hannah issued Richardson a reprimand for falling behind her duties and for deficient performance. In the spring of 1993, Richardson received a warning for failing to collect an acceptable percentage of past due accounts and for poor customer service. In addition, Richardson's overall performance was rated "below expected" in her 1993 annual review. Hannah sought help from his supervisor, Peter Darst ("Darst"), for ways to improve Richardson's production. Darst advised Hannah to set and track specific goals for Richardson.

However, Richardson fell short of her goals during the first quarter of 1994 and in her 1994 annual review, she was rated "below expected." Richardson submitted a written rebuttal to her 1994 evaluation. Connie Fitzgerald ("Fitzgerald"), First Citizens' Regional

2

Human Resources Manager, then intervened and met with Richardson but was unable to resolve the problem. Richardson filed a formal appeal. James M. Parker ("Parker"), First Citizens' Executive Vice President, met with Richardson on November 18, 1994. During the meeting, Richardson remarked she could not work with Hannah. Parker informed Richardson, by letter dated November 23, 1994, that his solution was to transfer Richardson to First Citizens' Bayboro, North Carolina branch.

Richardson did not report to work after the New Year holiday. Instead, First Citizens received a letter from Richardson, dated January 6, 1995, in which Richardson asserted that she intended "to proceed through appropriate channels to contest the bank's attitude and decisions [with] respect to [her] transfer and this resultant forced resignation and retirement." Richardson requested in her resignation letter that First Citizens waive its notice requirements for resignation and retirement and make her retirement status effective as of January 15, 1995.

First Citizens informed Richardson by January 23, 1995 letter that they would not relent in their transfer directive but would waive the ninety-day notice period for retirement and would place Richardson into a retired status effective January 15, 1995. Richardson filed a Charge of Discrimination with the EEOC on July 12, 1995 and amended her charge on August 4, 1995.

The District Court ruled that the period that Richardson had to file her charge of discrimination with the EEOC under the ADEA and the ADA began on January 6, 1995 and that, therefore, Richardson failed to timely file her charge. This court does not reach the issue of the timeliness of Richardson's complaint as Richardson has failed to show a genuine issue of material fact as to her claims under the ADEA.

A plaintiff may establish a prima facie case under the ADEA by offering direct evidence that a decision to terminate was motivated by age. Alternatively, a plaintiff may rely upon the indirect, burden-shifting method of proof developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). To demonstrate a prima facie case of discrimination under the ADEA using the McDonnell Douglas proof

3

scheme, a plaintiff must show by a preponderance of the evidence that: (1) she is a member of a protected class; (2) she was subject to some adverse job action; (3) at the time of the job action she was performing at a satisfactory level, meeting her employer's legitimate expectations; and (4) following the job action she was replaced by someone of comparable qualifications substantially younger than herself. See Blistein v. St. John's College, 74 F.3d 1459, 1467-68 (3d Cir. 1996). If a plaintiff can meet her burden of proving each element, an inference of discrimination arises. See Henson v. Liggett Group, Inc., 61 F.3d 270, 274 (4th Cir. 1995).

The employer can then rebut the inference of discrimination by producing evidence of legitimate, nondiscriminatory reasons for the job action. See id. If the employer is able to do so, the presumption of discrimination disappears, and the plaintiff, in order to survive a motion for summary judgment, must present evidence creating a genuine issue of material fact that the employer's proffered reasons are a pretext for intentional discrimination. See id . at 275.

Richardson has no direct evidence that First Citizens discriminated against her on the basis of her age. Richardson's case also fails under the indirect, McDonnell Douglas proof scheme because she cannot establish her prima facie case.

Richardson cannot prove that she was performing her job responsibilities at a satisfactory level and, therefore, cannot meet the third element of the prima facie case under the McDonnell Douglas proof scheme. In the spring of 1993, Richardson received a written warning for failing to collect an acceptable percentage of past due accounts and for giving poor customer service. In her 1994 annual review, Richardson's performance was again rated "below expected." The Branch Manger, Hannah, noted that Richardson, on three occasions, failed to process cashier's checks properly and left a customer waiting for her in the lobby while she left the building through the back door to go to lunch. In addition, Richardson cashed a Certificate of Deposit for $50,000 when it was only worth $30,000. These factors indicate that at the time of her transfer, Richardson's performance was unsatisfactory.

Further, Richardson cannot establish the fourth element of her prima facie case -- that following her "discharge" she was replaced

4

by someone substantially younger than herself. After Richardson retired, the position of Retail Banker I at the Grifton office was filled by Charles E. Branch. Branch was 54 years old when he filled the position of Retail Banker I at the Grifton Branch.

Finally, First Citizens presented evidence of a legitimate, nondiscriminatory reason for transferring Richardson. On November 18, 1994, Richardson told First Citizens' Executive Vice President, Parker, that she could not work with her Branch Manager, Hannah. Parker had no problem with Hannah's performance and did not wish to transfer his Branch Manager. Therefore, Parker decided to transfer Richardson.

Richardson also failed to establish a prima facie case as to her claims under the ADA. A plaintiff may establish a prima facie case under the ADA by offering direct evidence that the employment action was motivated as a result of her medical conditions. See Williams v. Avnet, Inc., 910 F.Supp. 1124 (E.D.N.C. 1995). Alternatively, as with an ADEA claim, a plaintiff may rely upon the McDonnell Douglas proof scheme. See Ennis v. Natl Assn. of Business and Educ. Radio, Inc., 53 F.3d 55 (4th Cir. 1995).

Richardson has no direct evidence that First Citizens discriminated against her on the basis of her medical conditions. Thus, she cannot establish her prima facie case by using direct evidence. In order to meet the first element of the McDonnell Douglas indirect proof test, Richardson must establish that she is disabled within the meaning of the ADA. Under the ADA, a disability is defined in pertinent part as: (a) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (b) a record of such an impairment; or (c) being regarded as having such an impairment. See 42 U.S.C. § 12102(2)(a)(b).

Major life activities include caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. See McKay v. Toyota Motor Mfg., USA, Inc., 878 F.Supp. 1012, 1014 (E.D. Ky. 1995), citing 29 C.F.R.§ 1630.2(i). When determining whether an impairment substantially limits a major life activity, courts consider the following factors: (1) the nature and severity of the impairment; (2) the duration or expected duration of

5

the impairment; and (3) the permanent or life-term impact or expected impact of or resulting from the impairment. See McKay, citing 29 C.F.R. § 1630.2(j)(2).

A plaintiff claiming that her medical conditions substantially limit the major life activity of work must demonstrate not only the severity of her conditions, but also that she is significantly restricted in her ability to perform a class of jobs or a broad range of jobs in various classes. See 29 C.F.R. § 1630.2(j)(3)(i). Moreover, the inability to perform one aspect of a job while retaining the ability to perform the work in general does not amount to a disability under the ADA. See Dutcher v. Ingalls Shipbuilding, 53 F.3d 723, 727 (5th Cir. 1995).

None of the conditions with which Richardson has been diagnosed substantially limited her ability to perform her job during the time she began having performance problems at work. Moreover, even if Richardson's brief leave of absence due to her arthritis was sufficient to constitute a disability under the ADA, she cannot prove the other elements of her prima facie case because she cannot establish that she was constructively discharged or that she was performing at a satisfactory level when she was allegedly forced to retire.

Richardson cannot establish that her alleged discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination. The record demonstrates that Parker was the individual who made the decision to transfer Richardson. Because Parker was unaware of Richardson's medical conditions when he decided to transfer her, his decision could not have been motivated by her alleged disability. See Dutson v. Farmers Ins. Exch., 815 F.Supp. 349 (D. Or. 1993). Furthermore, First Citizens had legitimate, nondiscriminatory reasons for transferring Richardson, including her admitted inability to work with the Grifton Branch Manager. Richardson presented no evidence that First Citizens' proffered reasons are pretextual.

Accordingly, because we find Richardson failed to establish a prima facie case as to her claims under the ADEA and ADA and cannot demonstrate that her employer's legitimate, non-discriminatory reason for her transfer was pretextual, the decision of the district court is,

AFFIRMED.

6