# Illinois Official Reports

## Appellate Court

---

**_Batson v. The Oak Tree, Ltd._, 2013 IL App (1st) 123071**

---

| | |
|---|---|
| Appellate Court Caption | PHYLLIS BATSON, Plaintiff-Appellee, v. THE OAK TREE, LIMITED, Defendant-Appellant (Hale Demar and The Oak Tree Restaurant, Limited, Defendants). |
| District & No. | First District, First Division<br>Docket No. 1-12-3071 |
| Filed | December 2, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | On appeal from a judgment for plaintiff in an action alleging breach of contract and retaliatory discharge from her position as a manager of defendant restaurant, the judgment was upheld over defendant's contention, *inter alia*, that the trial court erred in applying the collateral source rule to prevent defendants from relying on the affirmative defense of judicial estoppel and in rejecting defendant's claim that there was insufficient evidence the contract was breached, since the collateral source rule was properly applied where plaintiff's retaliatory discharge claim was based only on her allegation that she was terminated for filing a workers' compensation claim and her social security disability claim would not judicially estop that claim, and defendant never presented any evidence that the basis for discharging plaintiff was due to her inability to work. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 10-L-10997; the Hon. James P. Flannery, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Robert Orman, of Chicago, for appellant.

Andreou & Casson, Ltd., of Chicago (Frank J. Andreou, of counsel), for appellee.

Panel

JUSTICE DELORT delivered the judgment of the court, with opinion. Presiding Justice Connors and Justice Hoffman concurred in the judgment and opinion.

**OPINION**

¶ 1   Plaintiff Phyllis Batson filed a complaint against defendants The Oak Tree, Limited (Oak Tree), The Oak Tree Restaurant, Limited, and Hale Demar, alleging, *inter alia*, breach of contract and retaliatory discharge. A jury eventually awarded plaintiff $150,000 in damages on her breach of contract claim, and $50,000 on her retaliatory discharge claim. On appeal, Oak Tree[1] contends that the trial court erred in: (1) holding that the collateral source rule prohibited defendants from asserting the affirmative defense of judicial estoppel; (2) denying its motion for a new trial or judgment *n.o.v.* because there was insufficient evidence of a breach of contract; and (3) barring defendant from offering evidence of plaintiff's failure to mitigate damages when it later instructed the jury that it was defendants' burden to prove mitigation. For the following reasons, we affirm.

¶ 2                                   BACKGROUND

¶ 3   On September 27, 2010, plaintiff filed a seven-count complaint against defendants. Plaintiff alleged breach of contract against Oak Tree and Demar (counts I and II, respectively), tortious interference with contract against Demar (count III), and retaliatory discharge against Oak Tree and Demar (counts IV and V, respectively). Finally, plaintiff sought punitive damages against Oak Tree and Demar in her sixth and seventh "counts," respectively. Pursuant to a subsequent stipulation, the case proceeded to trial solely on counts I, III, and IV, and the punitive damages claim against Oak Tree was not repleaded as a separate count.

¶ 4   Plaintiff alleged that she began working at Oak Tree in 1985 and rose to the position of manager. In 1995, she moved to Michigan, but returned to Waukegan, Illinois, in January 1996. At that time, Hale Demar, the controlling shareholder of Oak Tree, asked her to return as manager of the restaurant. Demar offered to pay her $1,250 biweekly and, pursuant to a deferred compensation agreement, to contribute $20,000 annually to a trust account for

---

[1]Demar and The Oak Tree Restaurant, Limited, are not parties to this appeal.

plaintiff's benefit for the duration of the eight-year contract. In late 1997, both parties executed the contract.

¶ 5    Plaintiff's complaint then alleged that, in 2000, she suffered work-related injuries to her hands. Oak Tree denied that her injuries were work related, so plaintiff filed a claim for benefits under the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2012)) (the Act). Plaintiff took a leave of absence in September 2000 due to her injuries, but was cleared to return to work in 2001. When she called to arrange her return on April 15, 2001, another manager at Oak Tree, Sisi Sun, told plaintiff that plaintiff no longer had a job and was not allowed to return to work. Finally, plaintiff alleged that, on February 22, 2001, prior to her termination, Demar closed out the trust account and deposited the balance into his personal account.

¶ 6    On May 25, 2012, defendants filed their answer and affirmative defenses. Their first affirmative defense asserted judicial estoppel. Specifically, defendants argued that plaintiff claimed that she was "totally continuously [*sic*] and totally disabled since September 9, 2000," in a prior application for social security disability benefits and another application for supplemental security income, which defendants asserted were quasi-judicial proceedings under Illinois law. Defendants then pointed out that plaintiff's complaint claimed that she had been " 'cleared to return to work at the Restaurant in 2001.' " Noting that plaintiff was successful in the first proceeding (before the Social Security Administration), defendants argued that plaintiff's allegation in this lawsuit that she had been cleared to return to work was inconsistent with allegations she presented to the Social Security Administration. In support of this defense, defendants presented copies of plaintiff's April 2002 application for social security disability income and her January 2004 application for supplemental disability income. The other relevant affirmative defense that defendants asserted related to the mitigation of damages. In two paragraphs, defendants stated that (1) plaintiff had a legal duty to mitigate her damages and (2) she claimed that she had never looked for work or any other source of income to mitigate her damages.

¶ 7    On June 6, 2012, the trial court granted plaintiff's motion *in limine*, which sought to bar any statement regarding plaintiff's application for social security benefits. The trial court agreed with plaintiff's contention that the collateral source rule precluded Oak Tree's affirmative defense of judicial estoppel. In addition, the parties discussed jury instructions. With no objection from plaintiff, the trial court granted Oak Tree's request to provide Illinois Pattern Jury Instructions, Civil, No. 700.17 (2000) regarding mitigation of damages.

¶ 8    At trial, Demar testified that, at all relevant times, he owned 80% of Oak Tree, and his brother-in-law owned the remaining 20%. Demar agreed that plaintiff had worked at both restaurant locations for over 30 years, and at the time of her workers' compensation claim, she was the "floor manager." According to Demar, plaintiff's responsibilities were to hire, schedule, and oversee the restaurant's employees, "bank" the daily receipts, and help with carryout orders during busy times. Demar acknowledged that Oak Tree's office manager, Sisi Sun, had signed an "Employer's first report of injury or illness" on September 24, 2000. The report indicated that plaintiff reported a bilateral carpel tunnel injury occurring on April 15, 2000, and that the last date plaintiff worked had been September 9, 2000. Demar

acknowledged that, in a prior deposition, he stated that he had met with an insurance adjuster and that Demar did not believe in the "efficacy" of plaintiff's claim because he had "heard too many soft tissue stories." Demar further testified that he found it "hard to imagine carpal tunnel from hostessing or waitressing or carryout," adding, "A pot of coffee, a cup of coffee, that's it. We're not talking about heavy lifting here."

¶ 9    Demar did not recall ever having a conversation with plaintiff regarding her workers' compensation claim, but agreed with his prior deposition testimony that there was no explanation for plaintiff leaving. When asked whether his understanding was that plaintiff's leaving Oak Tree had nothing to do with her hand injuries, Demar stated that he did not know why she left. Demar further agreed that he never had an issue with plaintiff's job performance.

¶ 10    With respect to the deferred compensation agreement, Demar stated he did not know where the original contract was. Demar agreed that there were two copies of the agreement and that one of the copies had a different typeface and point size. Both copies, however, contained provisions that (1) defined a discharge for cause as, *inter alia*, "termination of employment for *** excessive absenteeism"; (2) vested plaintiff "100%" in the trust funds if she were discharged "not for cause"; and (3) required "continuous employment" by plaintiff for the entire term of the agreement, but excused from the definition of continuous employment "discharge by employer without cause." Finally, both copies had a provision that, if any term were found to be void, the remaining provisions would be binding "with the same effect as though the void parts were deleted."

¶ 11    Plaintiff testified that she was 66 years old and began working for Oak Tree in 1983. In 1992, she left Oak Tree for an unrelated hospitalization. In October 1992, she began working at another restaurant known as "Max's." In May 1994, Demar met plaintiff at Max's and asked her to return to Oak Tree. Plaintiff agreed and returned there that same month. On January 1, 1995, plaintiff again left Oak Tree to move to Michigan to work as a nursing assistant in home healthcare. Plaintiff returned to Illinois in August 1996, however, and lived with her daughter in Waukegan. Shortly thereafter, Demar contacted plaintiff and told her that his father, who originally owned the restaurant and hired plaintiff, was very ill. Plaintiff agreed to help with Demar's father's home health care.

¶ 12    In September or October 1996, Demar called plaintiff and asked her to return as a manager at Oak Tree. In October 1996, plaintiff met with Demar at Oak Tree and discussed the terms of the agreement regarding plaintiff's return, which included a deferred compensation agreement. According to plaintiff, Demar said that if plaintiff would stay at the restaurant for the eight years remaining on the restaurant's lease (or until the restaurant closed), Demar would deposit $20,000 each year into a trust for her benefit beginning December 31, 1998. Plaintiff and Demar executed the deferred compensation agreement around Christmas 1997. Plaintiff testified, however, that she never received a copy of the agreement.

¶ 13    Around the end of 1998, Demar asked plaintiff if she wanted him to deposit the full $20,000 into the trust or if she preferred having some of it in cash. Plaintiff asked to have $5,000 in cash, and Demar paid her that amount in cash, depositing the remaining $15,000. Plaintiff stated that she received the same $5,000 cash payment around the end of 1999, as well.

¶ 14 During the holiday season in 1999, plaintiff said that she started having problems with her hands. The pain continued, and plaintiff sought medical treatment in April or May 2000. Plaintiff said she was diagnosed with severe carpal tunnel in both hands, and had five surgical procedures on her right hand and one procedure on her left. The first procedure on her right hand took place on June 26, 2000, the second procedure (on her left hand) occurred on January 8, 2001, and the remaining procedures (on her right hand) all took place on April 15, 2002. Plaintiff testified that she sent a letter to Sisi Sun, the restaurant's office manager, on September 15, 2000, informing Oak Tree of the various procedures plaintiff would be undergoing. In addition, plaintiff said that, in October 2000, she told Sun that she had filed a claim for compensation under the Act.

¶ 15 In April 2001, plaintiff called Oak Tree to arrange for her return to work with an accommodation. Plaintiff said that she spoke to Sisi Sun, and Sun told her that plaintiff had no job there and that plaintiff had been terminated. Plaintiff's claim under the Act was still pending.

¶ 16 On cross-examination, plaintiff admitted that she had signed a social security document in 1997 stating that she became unable to work due to a disabling condition on October 2, 1996. Plaintiff further conceded that, on April 19, 2002, she had signed another social security document indicating that she had become unable to work due to a disabling condition as of September 9, 2000. Plaintiff also agreed that, during 2003 and 2004, she began receiving unspecified monthly disability payments of $645 that subsequently increased to $773. Finally, plaintiff stated that, although her signature appeared on one of the two purported copies of the deferred compensation agreement, neither copy represented the original agreement entered into with Demar.

¶ 17 At the close of plaintiff's case-in-chief, Demar moved for a directed verdict with respect to plaintiff's claim of intentional interference with contract (count III), the sole remaining count against him. The trial court granted Demar's motion, and Demar was dismissed from the case. The trial court denied Oak Tree's motion for a directed verdict with respect to the remaining counts for breach of contract and retaliatory discharge.

¶ 18 The jury returned its verdict on June 11, 2012, finding in favor of plaintiff on both claims. The jury awarded plaintiff $150,000 in damages on the breach of contract claim. On the retaliatory discharge claim, the jury awarded $50,000 in damages: $25,000 for emotional distress and $25,000 in punitive damages.

¶ 19 On July 5, 2012, defendants filed a combined motion for judgment *n.o.v.* or new trial pursuant to section 2-1202 of the Code of Civil Procedure (735 ILCS 5/2-1202(f) (West 2012)). Defendants made two claims: (i) there was insufficient evidence to support the jury's verdict as to plaintiff's breach of contract claim, and (ii) plaintiff was judicially estopped from claiming retaliatory discharge because she had taken an inconsistent position in her application for social security disability benefits (namely, that she was unable to work due to a disabling condition). No issue was raised regarding jury instructions or plaintiff's mitigation of damages. On September 20, 2012, the trial court denied defendants' posttrial motion. This appeal followed.

ANALYSIS

The Collateral Source Rule and Judicial Estoppel

Oak Tree first claims that the trial court erred in applying the collateral source rule to prevent defendant from raising judicial estoppel as an affirmative defense to the retaliatory discharge claim. Specifically, Oak Tree argues that it was improperly denied the ability to present evidence to the jury that plaintiff had earlier claimed that she was totally disabled and unable to work, but stated in this case that she was medically cleared and able to work. Oak Tree further claims that the collateral source rule, which generally precludes evidence that a plaintiff has obtained collateral benefits (*e.g.*, insurance), implicitly requires that the collateral benefits be legitimately acquired. Oak Tree concludes that this was not the case here, and "to the extent that a tension exists between judicial estoppel and the collateral source rule, the former should control."

Judicial estoppel is an equitable doctrine invoked by the court at its discretion. *People v. Runge*, 234 Ill. 2d 68, 132 (2009). The following five elements are generally required before that discretion comes into play: the party to be estopped must have (1) taken two positions, (2) that are factually inconsistent, (3) in separate judicial or quasi-judicial administrative proceedings, (4) intending for the trier of fact to accept the truth of the facts alleged, and (5) succeeded in the first proceeding and received some benefit from it. *Id.*

The collateral source rule is well established in Illinois. Under the rule, "evidence of benefits received by a plaintiff from collateral sources independent of the tortfeasor will not serve to diminish any damages otherwise recoverable." *Lang v. Lake Shore Exhibits, Inc.*, 305 Ill. App. 3d 283, 289 (1999). The rationale underlying this rule is to keep the jury from learning anything about collateral income that could influence its decision, and allowing any evidence as to collateral benefits "would render this long-standing rule meaningless." *Boden v. Crawford*, 196 Ill. App. 3d 71, 76 (1990).

As a general rule, an at-will employee in Illinois may be discharged by the employer at any time and for any reason. *Kelsay v. Motorola, Inc.*, 74 Ill. 2d 172, 181-82 (1978). The Act, however, specifically provides that "[i]t shall be unlawful for any employer *** to discharge *** an employee because of the exercise of his or her rights or remedies granted to him or her by this Act." 820 ILCS 305/4(h) (West 2012). Simply put, the Act "plainly prohibits a retaliatory discharge for the exercise of workers' compensation rights." *Smith v. Waukegan Park District*, 231 Ill. 2d 111, 119 (2008). As the *Kelsay* court held, the legislature's enactment of the Act "was in furtherance of sound public policy." *Kelsay*, 74 Ill. 2d at 181. The Act establishes a cause of action allowing former employees to sue former employers for retaliatory discharge, and thus creates an exception to the general rule that "at-will" employees are terminable at any time for any or no cause. See *id.* at 181-82.

To state a claim for retaliatory discharge, a plaintiff must establish the following elements: (1) she was an employee of the defendant at or before the time of the injury; (2) she exercised some right under the Act; and (3) her discharge was causally related to the exercise of her rights under the Act. *Grabs v. Safeway, Inc.*, 395 Ill. App. 3d 286, 291 (2009). The element of causation is not met, however, if the employer has a valid, nonpretextual basis for discharging the employee. *Clemons v. Mechanical Devices Co.*, 184 Ill. 2d 328, 336 (1998). As to the

element of causation, "the ultimate issue to be decided is the employer's motive in discharging the employee." *Id.*

¶ 27     In this case, Oak Tree sought to show that plaintiff's claim of retaliatory discharge was judicially estopped by eliciting testimony from plaintiff that she had claimed an inability to work in various applications for social security disability income. Plaintiff's theory of the case, however, did not depend upon her own ability to work; rather, she alleged that her discharge was solely predicated upon her filing of a worker's compensation claim under the Act. Moreover, at trial, Oak Tree presented no evidence to indicate that there was a valid, nonpretextual basis for discharging plaintiff. See *Clemons*, 184 Ill. 2d at 336. To the contrary, Demar's testimony revealed that he never had an issue with plaintiff's job performance and that he was skeptical as to the validity of plaintiff's injury. On this last point, Demar testified that he had "heard too many soft tissue stories," and that he found it "hard to imagine carpal tunnel from hostessing or waitressing or carryout," believing that only "heavy lifting" caused carpal tunnel injuries, and describing plaintiff's lifting requirements as either a pot of coffee or a cup of coffee. Therefore, since (i) defendants never presented any evidence that their valid, nonpretextual basis for discharging plaintiff was due to her inability to work; and (ii) plaintiff's retaliatory discharge claim was solely predicated upon defendants' terminating her employment solely due to her worker's compensation claim, her social security claim that she was unable to work due to a disabling condition was not a "factually inconsistent" position that judicially estops her claim here. In so finding, we note that her later course of conduct might shed some doubt on the representations she made to the Social Security Administration, but that is not an issue before us. Consequently, the trial court did not err in applying the collateral source rule, and Oak Tree's first claim of error is without merit.

¶ 28     Moreover, our decision is unaffected by Oak Tree's reliance on *Muellner v. Mars*, 714 F. Supp. 351 (N.D. Ill. 1989), *Levar v. Freeman*, 967 F. Supp. 1055 (N.D. Ill. 1997), and *Smeilis v. Lipkis*, 2012 IL App (1st) 103385. In *Muellner*, a "necessary prerequisite" for the plaintiff's retaliatory discharge count (to which the defendant employer sought to apply judicial estoppel) was that the plaintiff be able to perform the duties of her job with the defendant. *Muellner*, 714 F. Supp. at 360. In *Levar*, the plaintiff filed a complaint alleging discrimination and retaliation in violation of the Americans with Disabilities Act of 1990 (42 U.S.C. § 12101 *et seq.* (1994)). *Levar*, 967 F. Supp. at 1056. Specifically, the *Levar* plaintiff claimed that "the adverse action was a refusal to hire." *Id.* at 1059.

¶ 29     Finally, in *Smeilis*, the plaintiffs had filed a medical negligence claim against the defendant hospital, nursing home, and medical doctor, but settled with the hospital and nursing home and dismissed the complaint against all of the defendants. *Smeilis*, 2012 IL App (1st) 103385, ¶¶ 1, 12. Within one month, however, the plaintiffs filed a new complaint against the doctor, which included the opinion of a new expert witness contradicting the opinion of the expert witness in the first lawsuit and indicating that the doctor was not negligent. *Id.* ¶¶ 13-14. This court affirmed, holding that judicial estoppel should apply because the plaintiffs "adopted a wholly new view of the facts in order to recover against the sole remaining physician." *Id.* ¶ 33.

¶ 30     In this case, plaintiff's claim is not predicated upon a refusal to hire and her ability to perform her job is not a "necessary prerequisite" to succeeding in her claim of retaliatory

discharge for simply filing a claim under the Act. Unlike the expert opinion in *Smeilis*, which was necessary for the plaintiff to succeed in her medical negligence claim, plaintiff's claim is sufficiently unrelated to her allegations in her disability applications. Therefore, *Muellner*, *Levar*, and *Smeilis* do not compel a different result.

¶ 31                              Defendants' Motion for a New Trial/Judgment *n.o.v.*

¶ 32     Oak Tree next challenges the trial court's denial of its motion for a new trial or judgment *n.o.v.* Specifically, Oak Tree argues that it is "uncontested" that plaintiff failed to work for the full eight years required in the contract, and that Oak Tree did not breach the contract. For that reason, according to Oak Tree, the trial court should have either entered judgment *n.o.v.* in its favor or granted Oak Tree a new trial.

¶ 33     As a preliminary matter, we must discuss the relevant standards of review. In *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147 (2006), the supreme court was confronted with a challenge to a denial of the defendant's motion for new trial or judgment *n.o.v.* The court reiterated the holding that a judgment *n.o.v.* should be granted only where all of the evidence, viewed in the light most favorable to the opposing party, so overwhelmingly favors the moving party that no contrary verdict based on that evidence could ever stand. *Id.* at 178. "In other words, a motion for judgment *n.o.v.* presents 'a question of law as to whether, when all of the evidence is considered, together with all reasonable inferences from it in its aspect most favorable to the plaintiffs, there is a total failure or lack of evidence to prove any necessary element of the [plaintiff's] case.' " *Id.* (quoting *Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300, 311 (1942)). Judgment *n.o.v.* is a high standard, and it should not be entered if reasonable minds might differ as to inferences or conclusions to be drawn from the facts presented. *Id.* Furthermore, we may not usurp the jury's function and substitute our judgment on questions of fact that were " 'fairly submitted, tried, and determined from evidence that did not greatly preponderate either way.' " *Id.* (quoting *Maple v. Gustafson*, 151 Ill. 2d 445, 452-53 (1992)). We review a trial court's denial of a motion for judgment *n.o.v.* *de novo.* *Id.*

¶ 34     In contrast, a motion for a new trial should be granted only when the verdict is contrary to the manifest weight of the evidence. *Id.* at 178-79 (citing *Mizowek v. De Franco*, 64 Ill. 2d 303, 310 (1976)). "A verdict is contrary to the manifest weight of the evidence when the opposite conclusion is clearly evident or when the jury's findings prove to be unreasonable, arbitrary and not based upon any of the evidence." *Id.* at 179. "We are mindful that credibility determinations and the resolution of inconsistencies and conflicts in testimony are for the jury." *Id.*

¶ 35     The essential elements of a breach of contract are: (i) the existence of a valid and enforceable contract, (ii) performance by the plaintiff, (iii) breach of the contract by the defendant, and (iv) resultant injury to the plaintiff. *Coghlan v. Beck*, 2013 IL App (1st) 120891, ¶ 27. The terms of an agreement, if unambiguous, should generally be enforced as they appear, and those terms will control the rights of the parties. *Id.* (citing *Dowd & Dowd, Ltd. v. Gleason*, 181 Ill. 2d 460, 479 (1998)). Any ambiguity in a contract term, however, must be resolved against the drafter of the disputed provision. *Id.*

¶ 36 In this case, the evidence showed that plaintiff suffered injuries to her hands and filed a worker's compensation claim. When she contacted defendant–who never had an issue with her job performance–to arrange for her return to work, defendant informed her that she was terminated. As noted above, Demar's testimony revealed that he never had an issue with plaintiff's job performance, that he disbelieved plaintiff's injury because he had "heard too many soft tissue stories," and that he generally found it "hard to imagine carpal tunnel from hostessing or waitressing or carryout" because only "heavy lifting" caused carpal tunnel injuries and plaintiff's lifting requirements consisted of either a pot of coffee or a cup of coffee. These facts, construed in the light most favorable to plaintiff, established that Oak Tree terminated plaintiff in retaliation for filing a claim under the Act.

¶ 37 Plaintiff's deferred compensation agreement provided that plaintiff would be 100% vested in the trust funds if she were discharged "not for cause" and required "continuous employment" by plaintiff for the entire term of the agreement, but excluded discharge by the employer "without cause." Finally, both copies had a provision that, if any term were found to be void, the remaining provisions would be binding "with the same effect as though the void parts were deleted." Although the agreement defined discharge "for cause" as, *inter alia*, excessive absenteeism, construing that provision as allowing discharge for cause for filing a claim under the Act would render it void as against public policy. *Kelsay*, 74 Ill. 2d at 181; *Mohanty v. St. John Heart Clinic, S.C.*, 225 Ill. 2d 52, 64-65 (2006). Accordingly, Oak Tree's discharge of plaintiff in retaliation for her claim under the Act was not a discharge for cause, plaintiff vested 100% in the funds under the deferred compensation agreement, and her discharge could not be excluded from the definition of continuous employment.

¶ 38 As such, we cannot hold that all of the evidence, viewed in the light most favorable to the opposing party (*i.e.*, plaintiff), so overwhelmingly favors Oak Tree that no contrary verdict based on that evidence could ever stand. *York*, 222 Ill. 2d at 178. We also cannot hold that the opposite conclusion from the jury's verdict is clearly evident or the jury's findings were unreasonable, arbitrary, or not based upon any of the evidence. *Id.* at 179. Therefore, the trial court did not err in denying defendants' combined motion for judgment *n.o.v.* and motion for a new trial.

¶ 39                                        Plaintiff's Mitigation of Damages

¶ 40 Oak Tree's final contention on appeal is that the trial court erroneously prevented Oak Tree from presenting evidence of plaintiff's failure to mitigate her damages, but the court nonetheless instructed the jury that Oak Tree had the burden to prove failure to mitigate. This final contention, however, is unavailing because Oak Tree has forfeited consideration of this issue.

¶ 41 At the outset, Oak Tree's argument on this issue in its opening brief consists of four short paragraphs of facts, and one equally short paragraph of argument without citation to any authority. Supreme Court Rule 341 requires that an appellant include in its argument "citation of the authorities *** relied on." Ill. S. Ct. R. 341(h)(7) (eff. Feb. 6, 2013). In addition, it is well established that a reviewing court is not "simply a depository in which the appealing party may dump the burden of argument and research." *Pecora v. Szabo*, 109 Ill. App. 3d 824,

825-26 (1982) (holding that plaintiff's failure to cite any authority in support of his three-page argument forfeited the claim). For this reason alone, we find that Oak Tree has forfeited this claim.

¶ 42 In addition, as plaintiff points out, Oak Tree and its codefendants never raised this issue in their combined motion for judgment *n.o.v.* and for a new trial. Oak Tree does not address this argument in its reply brief. It is axiomatic that, in order to preserve an issue for review, "[*b*]*oth* a trial objection *and* a written post-trial motion raising the issue are required for alleged errors that could have been raised during trial." (Emphases in original.) *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). The rationale for requiring that an issue be raised in a written posttrial motion was explained over 50 years ago: "A trial judge should have an opportunity to appraise the errors which are asserted to have taken place. It is unfair to charge him with errors in a reviewing court without having brought them to his attention so that a new trial could have been granted if he found it advisable." *Perez v. Baltimore & Ohio R.R. Co.*, 24 Ill. App. 2d 204, 210 (1960). Here, however, the trial court was denied any opportunity to consider Oak Tree's contention that denying Oak Tree the opportunity to present evidence as to plaintiff's failure to mitigate her damages warranted a new trial. Therefore, on this additional ground, Oak Tree has forfeited this claim.

¶ 43                                                    CONCLUSION
¶ 44 Accordingly, we affirm the judgment of the trial court.

¶ 45 Affirmed.