2024 IL App (1st) 230014-U

THIRD DIVISION
March 20, 2024

No. 1-23-0014

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF KAY BOLNICK, | ) | Appeal from the Circuit Court of Cook County. |
| Petitioner-Appellant, | ) | |
| and | ) | No. 2007 D 003505 |
| HOWARD BOLNICK, | ) | |
| | ) | Honorable Lloyd James Brooks, |
| Respondent-Appellee. | ) | Judge, presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court.
Presiding Justice Reyes and Justice Van Tine concurred in the judgment.

**ORDER**

¶ 1    *Held:*    The trial court did not err in entering declaratory judgment in favor of respondent's counter-petition for declaratory judgment. Affirmed.

¶ 2    Petitioner Kay Bolnick (Kay) filed a petition seeking a declaration of her rights as to a prior maintenance award following the dissolution of her marriage with respondent Howard Bolnick (Howard). Respondent filed a response and counter-petition for declaratory judgment. The trial court entered an order finding that the terms of the maintenance award (as revised in May 2021) governed the calculation of maintenance going forward. On appeal, Kay contends that the trial

court lacked subject-matter jurisdiction to modify the judgment for dissolution of marriage and in any event, there was no evidence to support modifying that judgment. We affirm.

¶ 3                                                BACKGROUND

¶ 4      Petitioner Kay Bolnick and respondent Howard Bolnick were married on November 29, 1970. On April 5, 2007, Kay filed her petition for dissolution of marriage. On July 7, 2009, the trial court entered a judgment dissolving the parties' marriage, which incorporated a marital settlement agreement (MSA). The MSA provided in relevant part that Howard would pay Kay permanent maintenance consisting of 37.5% of the difference between Howard's "Gross Earned Income" and Kay's "Gross Applicable Income." The MSA defined Howard's gross earned income as all gross income Howard earned and received through his personal efforts, "whether received personally and/or *** by an entity in which he has an interest, including but not limited to, an interest of partnership, membership, shareholder or otherwise."

¶ 5                                     *Kay's October 2017 Petition to Enforce*

¶ 6      On October 17, 2017, Kay filed a "Petition to Enforce Payment of Maintenance." Kay's petition stated that Howard was an actuary and had been self-employed from 2009 (the date the parties' marriage was dissolved) until January 2016, at which point Howard claimed to be an employee of Radix Actuarial Consultants, Inc. (RAC), a Delaware corporation. Kay added that, prior to 2016, Howard's income had been approximately $180,000, but afterwards, Howard claimed to be an employee of RAC with an annual income of only $90,000. Howard refused Kay's request for tax returns, financial statements, or other documents concerning RAC. Kay asked the court to order "full disclosure of these matters in order to determine Howard's true earnings and income and what amount of maintenance Howard should be paying" because "it is apparent that Howard is attempting to conceal his true income for purposes of calculating the maintenance due Kay." Howard filed his response on January 2, 2018, denying the substance of Kay's allegations.

2

¶ 7 On October 9, 2020, the trial court issued an "opinion order" granting Kay's petition after having "heard and considered the testimony of the parties and *** the evidence." The court's order recounted that Howard was an actuary and had been self-employed doing business as "Radix" from the date the parties' marriage was dissolved until 2015. The court then noted that, in 2015, RAC was incorporated as an "S" corporation with Howard's current wife, Claudia, as the incorporator, president, and sole shareholder of RAC. Howard, by contrast, was RAC's sole employee. The court further found that, when Howard was the sole owner of Radix, his gross income was approximately $180,000 per year, whereas when he was an employee of RAC, his gross income was only $90,000 per year. The court's order recounted Howard's testimony that Claudia ("who is not an actuary or employee [of RAC] and performs no functions or duties for the company") determined his salary and the remaining revenues that RAC earned were "retained by RAC then distributed to Claudia annually." The court found that the dissolution of Radix and incorporation of RAC was "structured in a contrived fashion" to evade his support obligation. The order provided in relevant part as follows:

> "2. The court shall impute the revenue and/or income received by RAC and distributed to [Howard's] current wife Claudia, which is approximately $90,000.00 per year, into [Howard's] gross income or in the alternative the remaining revenues of RAC shall be computed and thereafter imputed as gross income to [Howard].
>
> ***
>
> 4. The parties shall continue to follow the formula agreed to in the MSA for the purpose of calculating maintenance.

> 5. Maintenance shall be recalculated based upon the imputed income to [Howard] by this court and shall relate back to the date of filing."

Finally, the court directed (1) Kay to calculate "maintenance due and owing that are in arrears to date in a proposed order" and (2) Howard to state his objections to Kay's proposed order.

¶ 8    On November 9, 2020, Howard moved the trial court to reconsider its order of October 9, 2020. On April 15, 2021, the court denied Howard's motion with respect to Kay's petition to enforce payment. The court then set a hearing for "Kay's proposed judgment order [regarding maintenance due in arrears] and Howard's objection thereto" for May 7, 2021. The record on appeal does not contain a transcript of this hearing.

¶ 9    On May 19, 2021, the trial court entered an order providing that paragraph 2 of its October 9, 2020, order was "clarified to read" that the court would impute into Howard's gross income the greater of either (1) the income RAC received and distributed to Howard's current wife (Claudia) or (2) "the remaining revenues of RAC," net of "ordinary and reasonable business expenses." The court directed both parties to "attempt to reach an agreement as to the arrearage owed from the date of the filing [of Kay's petition to enforce] to date."

¶ 10    On May 24, 2021, Kay filed her motion for reconsideration of the trial court's opinion order dated October 9, 2020. Kay argued that the order should have awarded the unpaid maintenance from the date Howard failed to pay the proper amount, *i.e.*, July 2015, instead of the date of her filing of the petition to enforce (October 2017). She did not challenge or otherwise raise any claim regarding that portion of the court's order imputing into Howard's gross income the greater of (1) RAC's distributions to Claudia or (2) RAC's remaining revenues.

¶ 11    On December 17, 2021, the trial court granted Kay's motion to reconsider. The court's order stated that Howard's maintenance obligation would be recalculated back to July 2015, "the

date in which [Howard] wrongfully and improperly reduced his maintenance obligation to [Kay]."

The court added that Howard would pay Kay "back maintenance (arrears) based upon $180,000.00

back to July 2015 and shall receive credit for maintenance paid from July 2015 forward."

¶ 12    On January 18, 2022, Howard filed a motion to reconsider / clarify the court's order of

December 17, 2021.  Howard argued, *inter alia*, that the trial court erred in using $180,000 per

year as Howard's income for purposes of calculating the maintenance arrearage because (1) Kay

never requested any change to Howard's imputed income and (2) the May 2021 order stated that

"Claudia's K-1 income from RAC shall be imputed to Howard in addition to his salary for purposes

of calculating maintenance."  Howard thus asked the court in part to clarify that the May 2021

order governed the imputed income to Howard with respect to "both the maintenance arrearages

and future maintenance calculations."  Kay filed her response on February 8, 2022, and Howard

filed his reply on March 11, 2022.  The trial court continued the matter to April 21, 2022.

¶ 13    On April 19, 2022, however, the trial court entered an order noting that the parties had

reached a settlement concerning Kay's October 2017 petition to enforce maintenance.  The court

order stated in relevant part that the court has imputed to Howard $180,000 in annual income "for

purposes of maintenance from July 2015 through October 9, 2020," and that Howard would pay

Kay $167,437.50, which would represent "due and unpaid maintenance from July 1, 2015, through

September 30, 2020."  The court order then stated that the matter was "off call."

¶ 14                          *Kay's June 2022 Declaratory Judgment Petition*

¶ 15    On June 27, 2022, Kay filed a petition for declaratory judgment pursuant to section 2-701

of the Code of Civil Procedure (Code) (735 ILCS 5/2-701 (West 2022)).  Kay's petition noted that

the trial court's order of December 17, 2021, required that Howard's maintenance obligation be

calculated based upon imputed gross earnings of $180,000 without any deductions.  Although

Howard had filed a motion for reconsideration, the parties entered into an agreed order settling

Kay's claims for unpaid maintenance through September 30, 2020, on the basis of an unadjusted income of $180,000. Kay added, however, that the parties disagreed as to Howard's maintenance obligation after September 30, 2020. Kay stated that this was "the only remaining controversy, [and] declaratory judgment determining it will terminate this litigation." Kay asked that the court declare, *inter alia*, that "all maintenance due to Kay *** be calculated based on the gross income earned by Howard as if RAC did not exist."

¶ 16     On September 6, 2022, Howard filed his response and counter-petition for declaratory judgment. Howard noted that the trial court's order dated May 19, 2021, clarified its prior order (dated October 9, 2020) by stating that Howard's income would be imputed to include the greater of (1) income received by RAC and distributed to Claudia or (2) "the remaining revenues of RAC, after the payment of ordinary and reasonable business expenses." Howard added that the trial court had not entered a subsequent order modifying this language. Howard then argued that it was "clear" that this revised formula "governs Howard's imputed 'Gross Earned Income' for maintenance moving forward." Howard asked that the court declare that his maintenance obligation be based upon the revised formula as stated in the May 19, 2021 order.

¶ 17     On October 31, 2022, the trial court held a hearing on the parties' petitions for declaratory judgment. At the conclusion of the parties' arguments, the court made the following findings:

> "THE COURT: *** I'm ready to rule.
>
> Okay, so let me start with the jurisdictional issue ***.
>
> Looking at Judge Ross' orders, I believe there's no doubt that the original Petition to Enforce payment of maintenance is, in fact, an open and now closed matter. The Court has no longer jurisdiction to modify the orders entered by Judge Ross.

The reason I believe that, I believe Judge Ross' [October, 9 2020,] order was intended to largely resolve the petition. It wasn't completely done, but it was largely done. She left it up to the parties based on her ruling to then come up with whatever the final figure was that Mr. Bolnick was to owe.

However, the parties, through their efforts, were unable to do that, and it turns out that part of the reason they were unable to do that is because there was some disagreement about what Judge Ross' October 9th order meant.

Judge Ross attempted to *** clarify that for the parties on May 19th, 2021 by amending one of the paragraphs from the October 2020 order. After that, it appears that Judge Ross now believed the parties could then be able to agree as to what was owed. Again, she was disappointed because that is not what happened.

Instead, Mrs. Bolnick filed a Motion to Reconsider. ***. The Motion to Reconsider was not resolved until December 17th of 2021. Apparently, however, the litigation still was not over because the parties still had never resolved the final dollar figure that was now to be owed in light of Judge Ross' ruling.

Finally, on April 19th of 2022, that Judgment order was entered. It set a specific dollar amount that Howard was to pay to Kay up to October 9th, 2020 ***.

That April 19th, 2022 Judgment order is, in fact, the final order that resolved the petition, at least it's the last order that you

7

could consider to have done that at which point the clock is running on any appeals, any further Motions to Vacate. Any other litigation connected to that petition, the clock was running.

So as far as this Court is concerned, the petition is now closed. The issue that's before me is whether or not Judge Ross' orders cover how to determine what Mr. Bolnick's obligations are after October the 9th, 2020 which, apparently, the parties are still disputing that particular issue.

After reading Judge Ross' order and listening to argument and reading the parties' pleadings, I think it is clear that the original MSA does not cover the exact situation that the parties now find themselves in. However, Judge Ross' order does. In particular, Judge Ross' order of May 9th, 2021 makes it clear that Mr. Bolnick's income for purposes of maintenance was to be calculated using the formula outlined in Judge Ross' order.

There's also no doubt that that calculation is different from the one that's in the MSA. However, again, the circumstance we find ourselves in is not the circumstance in the MSA.

Furthermore, even if Ms. Bolnick believed that Ms.—excuse me, Judge Ross' order from May 19th, 2021 somehow incorrectly interpreted the MSA, this Court is not in a position to act as an appellate court to reverse Judge Ross' order. I'm not in a position to revisit that order as I've laid out. I don't think I have jurisdiction to do that."

The court then stated that the May 19, 2021, order "stands, and moving forward, [Howard's] maintenance obligation is governed by that order."

¶ 18 The court then recounted that both parties had requested declaratory relief, and that it "[t]echnically" had granted relief to both, but it clarified that its "reading of it [the May 2021 order] is the reading requested by [Howard]." The court reiterated that it was interpreting the May 2021 order as being "the governing document to determine how [Howard's] maintenance obligation is to be determined."

¶ 19 Counsel for Kay then stated that he still was uncertain "how we're supposed to calculate [future maintenance]." The trial court responded that "paragraph one of Judge Ross' May 19th, 2021 order is the paragraph that defines what gross income is for [Howard] in his current circumstance. ***. His current circumstance is governed by paragraph one of Judge Ross' May 19, 2021 order." The court advised the parties to "turn back to that court order," which would then determine how to calculate Howard's gross income.

¶ 20 Counsel for Kay then asked the trial court whether it considered this ruling to be a final order. The following colloquy then took place:

"THE COURT: Absolutely. There were two cross petitions for declaratory relief. I just ruled on both. So as far as I'm concerned, there's nothing left.

MR. BERNICK: But there's no judgment.

THE COURT: My court order is the judgment. When you ask for declaratory relief, you ask my declaration. I just gave it to you. That's it.

> I assume what you're getting at is I didn't award money, but
>
> I wasn't asked to award money. I was asked to define the parties'
>
> right and obligations. I just did that."

Counsel for Howard then stated that she would draft the order and circulate it.

¶ 21    On that same day (October 31, 2022), the trial court entered its written declaratory judgment for the "reasons set forth on the record." In particular, the court found that Howard's "Gross Earned Income" for maintenance purposes was governed by the definition in paragraph 1 of the May 2021 order. The court further ordered that all maintenance payable by Howard to Kay pursuant to the MSA from October 9, 2020, going forward was to be calculated using Howard's gross earned income as defined as "the income received by RAC and distributed to his current wife, Claudia[,] or in the alternative[,] the remaining revenues of RAC, after the payment of ordinary and reasonable business expenses, whichever is greater of the two."

¶ 22    On November 29, 2022, Kay filed a motion to reconsider the trial court's order of October 31, 2022. Kay argued that the trial court incorrectly applied the "law of finality." Kay argued that the trial court erroneously (1) adopted a redefinition of gross earned income from the May 19, 2021, order and (2) construed the May 2021 order as a final order. Kay explained that the order of December 17, 2021, "expressly" found that the May 2021 order was not a final order, and the December 2021 order further reconsidered the May 2021 order by ordering Howard to pay maintenance on an income of $180,000.

¶ 23    On December 19, 2022, the trial court denied Kay's motion. The court's written order indicated that it had heard argument on the motion and was "advised in the premises." The record on appeal does not include a report of proceedings (or acceptable substitute) of this hearing.

¶ 24    On January 4, 2023, Kay filed her notice of appeal indicating that she sought to appeal from the trial court's orders entered on "December 19, 2022, and October 31, 2022, and any prior orders related to the same." This appeal follows.

¶ 25                                    ANALYSIS

¶ 26    On appeal, Kay contends the trial court's order on October 31, 2022, was erroneous on two respects: (1) the court lacked subject-matter jurisdiction to modify the July 2009 judgment for dissolution of marriage, and (2) "leaving aside the jurisdictional issue," there is no evidence supporting a modification. Howard responds that Kay has improperly recast the October 2022 order as one that modified the MSA, and this court lacks jurisdiction to consider Kay's "untimely and improper challenges" to the orders entered prior to the October 2022 order. Howard further argues that we should otherwise affirm the October 2022 order.

¶ 27    At the outset, we note that Kay has failed to include a transcript of the hearing on her motion to reconsider, which the trial court held on December 19, 2022. Kay, as the appellant, has the burden of providing a sufficient record on appeal. *Corral v. Mervis Industries, Inc.*, 217 Ill. 2d 144, 156 (2005); *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). In the absence of such a record, we must presume the trial court acted in conformity with the law and with a sufficient factual basis for its findings. *Id.* at 392. Furthermore, any doubts arising from an incomplete record will be resolved against the appellant. *Id.* This is particularly true when the judgment order states that the court is "fully advised." *Dell'Armi Builders, Inc. v. Johnston*, 172 Ill. App. 3d 144, 149 (1988). Here, the trial court's order denying Kay's motion to reconsider indicated that it had heard argument on the motion and was "advised in the premises." In the absence of a report of proceedings or acceptable substitute, we must presume that the trial court's order conformed with the law and had a sufficient factual basis. *Foutch*, 99 Ill. 2d at 392. There is thus no basis to

11

disturb the trial court's order of December 19, 2022, which denied the motion to reconsider. We now turn to Kay's appeal of the trial court's order dated October 31, 2022.

¶ 28    The remaining order from which Kay appeals resolved both her petition for declaratory judgment and Howard's cross-petition for declaratory judgment, both of which were brought pursuant to section 2-701 of the Code. Section 2-701(a) provides in relevant part as follows:

> "No action or proceeding is open to objection on the ground that a merely declaratory judgment or order is sought thereby. The court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, ***." 735 ILCS 5/2-701(a) (West 2022).

With certain exceptions not relevant here, section 105 of the Illinois Marriage and Dissolution of Marriage Act (IMDMA) provides that the Code shall apply "to all proceedings under this Act." 750 ILCS 5/105(a) (West 2022). Declaratory judgments in dissolution actions are thus provided for expressly. See *In re Marriage of Best*, 228 Ill. 2d 107, 116 (2008).

¶ 29    The appropriate standard of review to be applied to the trial court's declaratory judgment order depends upon both the underlying questions at issue and the nature of the proceedings in the trial court. *Kranzler v. Kranzler*, 2018 IL App (1st) 171169, ¶ 39. Where, as here, a trial court's decision in a declaratory judgment action is based upon questions of law rather than factual determinations, we review the trial court's decision under the *de novo* standard of review. *Fifield v. Premier Dealer Services, Inc.*, 2013 IL App (1st) 120327, ¶ 12.

¶ 30    Kay first argues that the trial court's October 2022 declaratory judgment was erroneous because it lacked subject-matter jurisdiction to modify the original July 2009 judgment for dissolution of marriage. Kay also argues that, even if the judgment of dissolution were capable of

modification, the trial court's order was nonetheless still erroneous because neither party sought modification of the original July 2009 judgment or its definition of Howard's Gross Earned Income. Kay adds that both her "Petition to Enforce" (filed in October 2017) and Howard's response sought only enforcement and not modification of the July 2009 judgment. Therefore, according to Kay, the trial court's October 2022 order was entered without jurisdiction for this added reason and further mandates reversal.

¶ 31     Kay's arguments, however, are forfeited because they are not only undeveloped but also misleading. Kay begins her first argument with a block quotation from the MSA (which the July 2009 judgment expressly incorporated) providing the definition of Howard's "Earned Income" for the purposes of his maintenance obligation. Kay then asserts—in a single sentence—that there can be "no question that the October 31, 2022 order modified [the MSA], since the order does so explicitly: ***." Kay then provides another block quote comprising a *portion* of the trial court's October 2022 order. It is a deeply rooted rule that a reviewing court is not merely " 'a depository in which the appealing party may dump the burden of argument and research.' " *Batson v. Oak Tree, Ltd.*, 2013 IL App (1st) 123071, ¶ 41 (quoting *Pecora v. Szabo,* 109 Ill. App. 3d 824, 825-26 (1982) (holding that the plaintiff's failure to cite any authority in support of his three-page argument forfeited the claim)); see also *People ex rel. Illinois Department of Labor v. E.R.H. Enterprises*, 2013 IL 115106, ¶ 56; Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited ***."). Here, Kay's argument is undeveloped because her single-sentence assertion that the court modified the MSA is merely conclusory and provides no analysis whatsoever. On this basis alone, we can reject Kay's argument.

¶ 32     In addition, Kay's first argument is misleading because the block quotation she provides from the trial court's October 2022 order fails to provide the prefatory phrase before the material she quotes: "For reasons set forth on the record, *the Court enters a declaratory judgment as*

*follows*: \*\*\*." By its very terms, the trial court did not modify the MSA; rather, it merely interpreted prior trial court orders (issued by a different presiding judge) that may (or may not) have modified the MSA. Kay's argument, in essence, is an attempt to "shoot the messenger." She is asserting that the October 2022 order was a modification of the 2009 Judgment, but in fact the October 2022 order merely declared the rights and obligations of the parties with respect to Howard's ongoing maintenance obligation (that a *different* presiding judge had previously ordered in May 2021). Kay's argument is therefore unavailing for this reason, as well. Moreover, forfeiture aside, Kay's arguments above and her final claim of error—which we discuss below— are substantively without merit.

¶ 33    Kay's final contention is that there was no evidence that Howard had suffered a substantial change in circumstances justifying the trial court's "modification" of the "opinion order." Kay further argues that, in entering the October 2022 order "modifying the [July 2009] Judgment," the trial court exercised no discretion; it "merely adopted the erroneous May 19, 2021 order that the judge who had drafted it, and who had heard the evidence, herself repudiated."

¶ 34    To the extent that the May 2021 order was "erroneous," it is irrelevant to the order on appeal before this court, namely, the trial court's October 2022 order. The May 2021 order was entered following Kay's petition *to enforce*, not the instant petition here: Kay's petition *for declaratory judgment*. The October 2022 order, which interpreted the (purportedly erroneous) May 2021 order and resolved Kay's declaratory judgment petition, is the only order before us.

¶ 35    As the trial court observed, the May 2021 order spelled out Howard's maintenance obligation following the incorporation of RAC and Howard becoming its employee. Following motions to reconsider and various objections, the parties eventually entered into a settlement as to Howard's maintenance arrearage, which the trial court memorialized in its order dated April 19, 2022. That April 2022 order did not otherwise alter the May 2021 order and was the final order

that fully resolved Kay's original petition to enforce. Kay then had 30 days from the date of that order, *i.e.*, until May 19, 2022, to file her notice of appeal. See Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017). She did not do so, however, until January 4, 2023.

¶ 36 Therefore, the time to appeal the April 2022 order (the final order on Kay's petition to enforce that encompassed the May 2021 order) has long passed. We recognize the well-established rule that an appeal from a final judgment " 'draws in question all prior non-final orders and rulings which produced the judgment.' " *Burtell v. First Charter Service Corp.*, 76 Ill. 2d 427, 433 (1979) (quoting *Elfman Motors, Inc. v. Chrysler Corp.*, 567 F.2d 1252, 1253 (3d Cir. 1977)). In addition, we note that an unspecified judgment in a notice of appeal is nonetheless reviewable if it is a " 'step in the procedural progression leading' " to the judgment specified in the notice of appeal. *Id.* at 435 (quoting *Elfman Motors*, 567 F.2d at 1254).

¶ 37 Here, however, the April 2022 order was not a step in the procedural progression leading to the precise order on appeal to this court, namely, the October 2022 order. Rather, the October 2022 order originated from a declaratory judgment action, which is characterized as *sui generis* because it is neither legal nor equitable. *Zurich Insurance Co. v. Raymark Industries, Inc.*, 118 Ill. 2d 23, 57-58 (1987). As the Restatement (Second) of Judgments explains, "As is the case with other types of action, *an action for a declaration may not be employed to relitigate a claim already adjudicated* ***. Neither will a declaratory judgment be available to assert technical defects or mere error in a prior judgment." (Emphasis added.) Restatement (Second) of Judgments § 33, Comment *a* (1982). The Restatement, however, does note that declaratory judgment actions "may be employed to determine the meaning of an ambiguous judgment." *Id.* In that instance, the trial court's declaration "would not derogate from the binding effect of the prior decision, but would specify what was decided." *Id.* This is precisely what occurred below: the trial court specified in its October 2022 order what had been decided in May 2021 by determining the meaning of the

purportedly ambiguous May 2021 judgment. Therefore, we must reject any challenge from Kay to the May 2021 order—implicit or otherwise—as untimely.

¶ 38    Additionally, we agree with Howard that Kay's argument is forfeited. " 'It is fundamental to our adversarial process that a party waives his right to complain of an error where to do so is inconsistent with the position taken by the party in an earlier court proceeding.' " *McMath v. Katholi*, 191 Ill. 2d 251, 255 (2000) (quoting *Auton v. Logan Landfill, Inc.,* 105 Ill. 2d 537, 543 (1984)). The rationale of this rule is that it would be unfair to allow one party (here, Kay) a second bite at the apple based upon the error she injected into the proceedings. *Id.* Here, Kay's May 2021 motion to reconsider only asked the trial court to change the date of the unpaid maintenance from the filing date of her petition to enforce (October 2017) to the date Howard failed to pay the proper amount (July 2015). She did not challenge or otherwise raise any claim regarding that portion of the court's order imputing into Howard's gross income the greater of (1) RAC's distributions to Claudia or (2) RAC's remaining revenues. Since her position before us is at least "inconsistent" with that before the trial court, we must hold that she has forfeited any claim of error. See *id.*

¶ 39    Finally, Kay does not directly challenge, nor do we find error in, the trial court's declaratory judgment that it issued on October 31, 2022. The trial court's order in May 2021 imputed income to Howard comprised of the greater of either (1) the income RAC received and distributed to Howard's current wife (Claudia) or (2) the remaining revenues of RAC net of its ordinary and reasonable business expenses. Nowhere in that paragraph did the trial court indicate that this altered definition was only applicable to the maintenance arrearage and an entirely different definition would then apply for Howard's maintenance obligation going forward. If the trial court had intended to do so, it could have easily provided that additional definition. Furthermore, the May 2021 order was in response to Kay's petition to enforce, which argued in substance that Howard's incorporation of RAC was a pretext and sought additional maintenance going forward

16

instead of merely a specific time period in the past. The trial court's order granted Kay's petition in its entirety and not "in part." Although the December 2021 order muddied the waters by stating that Howard's maintenance obligation should have been calculated upon $180,000 per year, and not the definition it provided in the May 2021 order, Howard filed a motion to reconsider challenging that part of the December 2021 order, arguing in part that Kay never sought that specific change in the income definition. Before the trial court had an opportunity to resolve this, however, the parties entered into a settlement, resulting in the order dated April 19, 2022, which was the final order resolving Kay's petition to enforce.

¶ 40    In sum, on the facts before us, the trial court did not err in issuing its declaratory judgment that the altered amounts imputed to Howard as his gross income (as reflected in the May 2021 order) would represent the amount to be applied going forward and not solely for the arrearage. Therefore, we reject Kay's implicit challenge to the trial court's declaratory judgment.

¶ 41                                CONCLUSION

¶ 42    For the foregoing reasons, the trial court did not err in entering its declaratory judgment in favor of Howard. Consequently, we affirm the judgment of the circuit court.

¶ 43    Affirmed.